UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kurt A. Beseke, individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Equifax Information Services LLC,<br><br>Defendant. | Case No. 17-cv-4971-DWF-KMM<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

**PRELIMINARY STATEMENT**

1. This consumer class action is brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA") against Defendant Equifax Information Services LLC ("Equifax") which routinely violates the FCRA's basic protections by reporting obsolete accounts.

2. Recognizing that the content of consumer reports can have a significant impact on people's lives, Congress has chosen to regulate the procurement, use, and content of those reports through the FCRA.

3. The FCRA protects consumers by putting limits on how long adverse information can appear on credit reports. 15 U.S.C. § 1681c(a).

4. Specifically, "no consumer reporting agency may make any consumer report containing . . . accounts placed for collection or charged to profit and loss which antedate the report by more than seven years." 15 U.S.C. § 1681c(a)(4).

5. For nearly 40 years, the Federal Trade Commission ("FTC") has opined that the seven year obsolescence period does not restart if a consumer pays a delinquent account: "There is no exception to that prohibition for accounts which are subsequently paid and such an interpretation would have the effect of punishing consumers who repay their indebtedness while rewarding those who do not." Peeler, FTC Informal Staff Opinion Letter (Aug. 8, 1979) (attached as Ex. A).

6. In 2007, the Seventh Circuit warned Equifax that restarting the obsolescence period on a delinquent account where a payment is subsequently made would violate the FCRA. *See Gillespie v. Equifax Info. Servs., L.L.C.*, 484 F.3d 938, 942 (7th Cir. 2007).

7. Equifax, however, continues to report delinquent accounts past the statutory obsolescence period if the consumer has caught up on the delinquent account.

8. To make matters worse, Equifax also omits dates of first delinquency on its reports so that consumers and creditors cannot tell if the reported account is obsolete.

9. On behalf of himself and two classes of similarly situated consumers, Plaintiff seeks to hold Defendant accountable for its willful and systemic violations of the FCRA's obsolescence and accuracy protections.

10. Plaintiff complained about Defendant's illegal practice, but Defendant refused to correct his report. Plaintiff therefore brings an individual claim for Defendant's failure to conduct a reasonable reinvestigation resolving his dispute, in violation of 15 U.S.C. § 1681i.

## PARTIES

11. Plaintiff Kurt A. Beseke is a natural person who resides in the State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

12. Defendant Equifax Information Services, LLC ("Equifax") is a credit bureau doing business in Minnesota and is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f). Along with Experian and Trans Union, Equifax is one of the "Big 3" credit bureaus that dominate the credit reporting industry.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1441 and 15 U.S.C. § 1681p.

14. Venue is proper under as this case was removed from Minnesota state court, and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THE FCRA'S OBSOLESCENCE PROTECTIONS

15. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives; second, that despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

16. Recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

17. In passing the FCRA Congress was concerned about creditors placing undue emphasis on outdated information. Based on a desire to ensure credit markets that focused on current information, as well as a desire to allow consumers to improve their credit standing over time, the FCRA requires that "no consumer reporting agency may make any consumer report containing . . . accounts placed for collection or charged to profit and loss which antedate the report by more than seven years." 15 U.S.C. § 1681c(a)(4).

18. The seven year period begins 180 days after "the date of the commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action." 15 U.S.C. § 1681c(c)(1).

19. The FCRA also requires creditors to report the date of first delinquency to the credit bureaus. 15 U.S.C. § 1681s-2(a)(5).

20. For nearly 40 years, the FTC has opined that a consumer's catch-up payments on a delinquent account does not restart the obsolescence period provided in 15 U.S.C. § 1681c (sometimes referred to as "Section 605" of the FCRA). In a staff opinion letter, the FTC stated:

> Section 605(a)(4) provides that accounts placed for collection or charged to profit and loss may not be reported for if they antedate the report by more than seven years. There is no exception to that prohibition for accounts which are subsequently paid and such an interpretation would have the effect of punishing consumers who repay their indebtedness while rewarding those who do not. Therefore, it has been the staff opinion that subsequent repayment of an account placed for collection or charged to profit and loss does not extend the period for which it may reported.

Peeler, FTC Informal Staff Opinion Letter (Aug. 8, 1979).

21.     The FTC has reaffirmed and reiterated this rule many times over the course of the last forty years. Fitzpatrick, FTC Informal Staff Opinion Letter (Mar. 8, 1985) (attached as Ex. B); Brinckerhoff, FTC Informal Staff Opinion Letters (July 26, 1985) (attached as Ex. C); Forty Years of Experience with the Fair Credit Reporting Act at 57 (2011).[1]

22.     In 2007, the Seventh Circuit found that Equifax's consumer disclosures were potentially misleading because the disclosure included a "Date of Last Activity" field that reflected either the date of delinquency or the date of the last payment on the account, whichever was latest. *Gillespie,* 484 F.3d at 939 ("If the account is delinquent, with no subsequent activity, then the Date of Last Activity reflects the date of delinquency.  If the consumer has been paying the account, the Date of Last Activity reflects the last payment.  In the case of a previously delinquent account in which the consumer has started to make subsequent payments, the last payment by the consumer replaces the delinquency date in the Date of Last Activity field.")

23.     In particular the Seventh Circuit was concerned that the Date of Last Activity field could restart the obsolescence clock for delinquent accounts that were subsequently paid:

---

[1]     Available at https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary interpretations/110720fcrareport.pdf.

> More troubling is the concern that Equifax's exclusive use of the Date of Last Activity could effectively allow Equifax the opportunity to keep delinquent accounts in the credit file past the seven and one-half year limitation of § 1681c(c)(1). The Date of Last Activity that previously listed the date of delinquency in the account will be replaced should the consumer make an intervening payment on the account. The date of the intervening payment would become the new Date of Last Activity used in the seven and one-half year calculation. However, the negative credit history relating to the prior delinquency would presumably remain within the consumer's credit file despite the fact that the consumer faces a new seven and one-half year period before the information is removed from her file.

*Id.* at 942. In other words, the Seventh Circuit was concerned that Equifax may be reporting, in violation of the FCRA, obsolete delinquent accounts where a subsequent payment was made.

24. As a result of the *Gillespie* litigation, Equifax added a "Date of First Delinquency" field on its consumer file disclosures.

25. As described below, Equifax reports delinquent account information older than the seven year and 180 day period where the consumer has caught up on the account, even where the consumer tells them that they are reporting an obsolete delinquent account. Further, Equifax misleadingly omits the date of first delinquency from its reports, which further deprives consumers of the benefits of the FCRA's obsolescence protections.

## FACTUAL ALLEGATIONS

26. Plaintiff had a mortgage account with Washington Mutual.

27. At some point, Chase acquired Plaintiff's Washington Mutual mortgage account.

6

28. During the financial crisis, Plaintiff experienced financial difficulty and fell behind on his mortgage.

29. Plaintiff was eventually able to get caught up on his mortgage, then paid it off in 2014.

30. The delinquency lasted at least from October 2008 through June 2011.

31. Chase reported to Equifax that the Date of First Delinquency was 10/2008.

32. Plaintiff's January 10, 2011, Equifax credit report shows that Equifax was on notice that the delinquency commenced in September or October 2008.

33. In April and September 2010 and February and July 2011, Chase pulled Plaintiff's credit report from one or more credit bureaus for the purpose of collection.

34. In a credit report dated March 2, 2017, Equifax reported the Chase account with an account history of "Past Due" for certain months during the delinquency that commenced in September or October 2008.

35. Equifax knew that it should not have reported the delinquency on the Chase account in 2017, because Chase had reported to Equifax that the delinquency commenced in 2008, as reflected in, for example, Plaintiff's January 10, 2011, Equifax credit report.

36. An Equifax policy dictates that had Plaintiff failed to ever catch up on his loan, Equifax, consistent with the FCRA, would have removed the account and any indication of the delinquency that commenced in 2008 from Plaintiff's credit reports after the expiration of the seven-year obsolescence period from the date of the commencement of the delinquency.

37. However, because Plaintiff got caught up on his loan, Equifax followed a different internal policy, which had Equifax continue to report the account and the indication, "Past Due," for certain months of the delinquency that commenced in 2008.

38. After receiving his March 2, 2017, Equifax credit report, Plaintiff disputed the Chase account to Equifax.

39. On March 30, 2017, Plaintiff disputed the Chase account to Equifax.

40. Plaintiff explained that because of the age of the delinquency, the account should be removed from his credit report.

41. In his March 30, 2017, dispute, Plaintiff asked, *inter alia*, that the date of first delinquency be verified.

42. Plaintiff received investigation results from Equifax dated April 14, 2017.

43. Equifax's April 14, 2017, investigation results indicated that the disputed information had been "verified."

44. Equifax's April 14, 2017, investigation results still showed an account history of "Past Due" for certain months during the delinquency that commenced in September or October 2008.

45. Equifax's April 14, 2017, investigation results still failed to indicate the date of first delinquency.

46. The omission of the 2008 date of first delinquency was materially misleading because it failed to show that the delinquency was more than seven years old.

47. Equifax's April 14, 2017, investigation results still failed to indicate that the Chase account was disputed.

48. Plaintiff disputed the Chase account to Equifax multiple times, including without limitation the dispute specified herein.

49. Due to Defendant's failures to conduct reasonable investigations of Plaintiff's disputes, the date of first delinquency was not accurately modified.

50. On or about July 14, 2017, Equifax sold a credit report to Capital One.

51. Equifax prepared the report for Capital One without regard for the fact that the delinquency on the Chase account commenced in 2008.

52. Capital One denied Plaintiff's application for a credit limit increase on his Menard's card due at least in substantial part to the inaccurate and obsolete Chase account on Plaintiff's Equifax credit report.

53. Thus, despite the FTC's guidance, Seventh Circuit case law, and Plaintiff's dispute, Equifax continued to report the obsolete account.

54. As a result of Defendant's actions and omissions, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses, detriment to his credit rating, and emotional distress.

55. At all times pertinent hereto, Defendant acted by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendant.

## CLASS ALLEGATIONS

56. Plaintiff asserts his claims on behalf of the Classes defined below:

**Obsolete Account Class:**

All natural persons upon whom Defendant published a consumer report from November 22, 2015, and continuing through the resolution of this case where the consumer report (1) contains an account placed for collection or charged to profit and loss where the date of first delinquency was more than seven years and 180 days prior to the date of the consumer report and (2) reports all or part of the payment history during the delinquency period.

**Omitted Delinquency Date Class**

All natural persons upon whom Defendant published a consumer report from November 22, 2015, and continuing through the resolution of this case where the consumer report (1) contains an account placed for collection or charged to profit placed for collection or charged to profit more than seven years and 180 days prior to the date of the consumer report (2) reports all or part of the payment history during the delinquency period, and (3) does not report a date of first delinquency.

57. This action is brought, and may properly be maintained, as a class action under Fed. R. Civ. P. 23(b)(3). The proposed Class is ascertainable from Defendant's records.

58. <u>Numerosity</u>: The Classes are so numerous that joinder of all class members is impracticable. Defendant produces reports nationwide, and has produced millions of reports on consumers during the class period, many of whom are members of the Classes.

59. <u>Typicality</u>: Plaintiff's claims are typical of the class members' claims. Defendant treated Plaintiff in the same manner as other class members.

60. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Classes, and have retained counsel experienced in complex class action litigation.

61. <u>Commonality</u>: Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes. These common questions include:

    a. Whether Defendant violated the FCRA by including delinquent accounts older than seven years on its consumer reports;

    b. Whether Defendant violated the FCRA by omitting dates of first delinquency in violation of § 1681e(b);

    c. Whether such violations were willful under 15 U.S.C. § 1681n; and

    d. The proper measure of statutory and punitive damages;

62. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the Classes do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

## TRIAL BY JURY

63.     Plaintiff is entitled to and hereby requests a trial by jury.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681c(a)
### On behalf of Plaintiff and the Obsolete Account Class

64.     Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

65.     Defendant Equifax willfully and/or negligently violated 15 U.S.C. § 1681c(a) by reporting a delinquency that commenced more than seven years and 180 days prior to Equifax's reports.

66.     As a result of Equifax's violations of § 1681c(a), Plaintiff and the Obsolete Account Class have suffered actual damages, including without limitation credit denials, out-of-pocket expenses, detriment to credit ratings, and emotional distress.

67.     Equifax's actions and omissions were willful, rendering it liable for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.  Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiff and other class members under 15 U.S.C. § 1681c(a)(4).  In addition to the conduct set forth above, Defendant's willful conduct is reflected by, *inter alia*, the following:

  a.  The FCRA was enacted in 1970; Defendant has had nearly 50 years to comply;

  b.  Defendant is a corporation with access to legal advice. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

  c.  Defendant knew or had reason to know that its conduct was inconsistent with administrative guidance, case law, and the plain language of the FCRA;

  d.  Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and

  e.  Defendant's violations of the FCRA were repeated and systematic.

68. Plaintiff and the Obsolete Account Class therefore seek actual damages, statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681e(b)
### On behalf of Plaintiff and the Omitted Delinquency Date Class

69. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

70. By omitting the date of first delinquency, Defendant Equifax willfully and/or negligently violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's consumer reports.

71. As a result of Equifax's violations of § 1681e(b), Plaintiff and the Omitted Delinquency Date Class have suffered actual damages, including without limitation credit denials, out-of-pocket expenses, detriment to his credit rating, and emotional distress. Plaintiff is therefore entitled to recover actual damages pursuant to 15 U.S.C. §§ 1681n and 1681o.

72. Equifax's actions and omissions were willful, rendering it liable for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n. Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiff and other class members under 15 U.S.C. § 1681e(b). In addition to the conduct set forth above, Defendant's willful conduct is reflected by, *inter alia*, the following:

   a. The FCRA was enacted in 1970; Defendant has had nearly 50 years to comply.

   b. Defendant is a corporation with access to legal advice. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

   c. Defendant knew or had reason to know that its conduct was inconsistent with administrative guidance, case law, and the plain language of the FCRA;

   d. Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and

   e. Defendant's violations of the FCRA were repeated and systematic.

73. Plaintiff and the Omitted Delinquency Date Class therefore seek actual damages, statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT III
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i

74. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

75. Defendant Equifax willfully and/or negligently violated 15 U.S.C. § 1681i in multiple ways including without limitation by failing to conduct a reasonable reinvestigation of Plaintiff's dispute(s) and by failing thereafter to appropriately delete or modify information in Plaintiff's file.

76. As a result of Equifax's violations of § 1681i, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses, detriment to his credit rating, and emotional distress. Plaintiff is therefore entitled to recover actual damages pursuant to 15 U.S.C. §§ 1681n and 1681o.

77. Equifax's actions and omissions were willful, rendering it liable for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n. Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiff under 15 U.S.C. § 1681i. In addition to the conduct set forth above, Defendant's willful conduct is reflected by, *inter alia*, the following:

    a.    The FCRA was enacted in 1970; Defendant has had nearly 50 years to comply;

    b.    Defendant is a corporation with access to legal advice. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

    c.    Defendant knew or had reason to know that its conduct was inconsistent with administrative guidance, case law, and the plain language of the FCRA;

    d.    Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and

    e.    Defendant's violations of the FCRA were repeated and systematic.

78.    Defendant Equifax is liable for Plaintiff's costs and attorney's fees, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Classes, prays for relief as follows:

    a.    Determining that this action may proceed as a class action under Rule 23 of the Federal Rules of Civil Procedure;

    b.    Designating Plaintiff as a Class Representative and designating Plaintiff's counsel as counsel for the Classes;

    c.    Issuing proper notice to the Classes at Defendant's expense;

    d.    Declaring that Defendant violated the FCRA;

    e.    Declaring that Defendant acted willfully, in knowing or reckless disregard of Plaintiff's and Class Members rights and its obligations under the FCRA;

 f. Awarding damages as provided by the FCRA;

 g. Awarding reasonable attorneys' fees and costs as provided by the FCRA;

 h. Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

Dated: November 22, 2017  **BERGER & MONTAGUE, P.C.**

  By: /s/ John G. Albanese
    E. Michelle Drake, # 0387366
    John G. Albanese, # 0395882
    43 SE Main Street
    Minneapolis, MN 55414
    emdrake@bm.net
    jalbanese@bm.net
    Telephone: 612-594-5999
    Facsimile: 612-584-4470

    and

  **GOOLSBY LAW OFFICE, LLC**

  John H. Goolsby, #0320201
  475 Cleveland Ave. N, Suite 212
  Saint Paul, MN 55104
  Telephone: (651) 646-0153
  jgoolsby@goolsbylawoffice.com

  **Attorneys for Plaintiff and the Classes**