## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Kurt A. Beseke, individually and on behalf of those similarly situated,

     Plaintiff,

v.

Equifax Information Services LLC,

     Defendant.

Case No. 17-cv-4971-DWF-KMM

**PLAINTIFF'S MEMORANDUM
OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO COMPEL**

## INTRODUCTION

Plaintiff Kurt Beseke moves to compel Defendant Equifax Information Services, LLC ("Equifax") to produce documents and testimony regarding consumer complaints it has received about the same conduct that is at issue in this lawsuit.  Plaintiff Beseke alleges that Equifax willfully violated the obsolescence and accuracy provisions of the Fair Credit Reporting Act ("FCRA") by reporting information about a delinquency period that began more than 7 years prior to the date of the report and omitting the Date of First Delinquency.  Beseke seeks statutory damages on behalf of himself and a class of other people whose rights were also violated. In order to demonstrate willfulness, which is a prerequisite to the recovery of statutory damages under the FCRA, Beseke must show that Equifax acted in knowing or in reckless disregard of its statutory obligations. 15 U.S.C. § 1681n, *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 57 (2007).  Beseke has a variety of methods available to him to make a factual showing of willfulness.  For example, he may show that Equifax's conduct was in violation of pellucid statutory

language, FTC guidance, or judicial interpretations of the statute.  *See, e.g., Syed v. M-I, LLC*, 853 F.3d 492, 504-05 (9th Cir. 2017); *Cortez v. Trans Union, LLC*, 617 F.3d 688, 72122 (3d Cir. 2010).  In addition to, or instead of, those methods for demonstrating willfulness, Beseke may show that Equifax's conduct was reckless because Equifax had actual notice, in the form of consumer complaints, that its conduct was improper. Numerous courts have held that consumer complaints are relevant to the issue of willfulness, and Equifax has previously been compelled to produce consumer complaints and disputes in FCRA litigation for precisely that reason.  *Edeh v. Equifax Info. Servs., LLC*, ("*Edeh* I"), No. 11-CV-2671 SRN/JSM, 2013 WL 1799006, at *2 (D. Minn. Apr. 29, 2013) (upholding order to compel production of complaints and noting that the "[i]nformation was relevant to the defendant's knowledge of the applicable statute and its actions in regard to the statute"); *O'Gara v. Equifax Info. Servs.*, LLC, No. 116CV01237TWPMPB, 2018 WL 513535, at *10 (S.D. Ind. Jan. 23, 2018) (ordering Equifax to produce information regarding other complaints and disputes); *Valenzuela v. Equifax Info. Servs. LLC*, No. CV-13-02259-PHX-DLR, 2015 WL 1097315, at *1 (D. Ariz. Mar. 5, 2015).  However, in spite of the relevance of this information, Equifax refuses to produce it in this case.

Equifax's objections to Plaintiff's discovery requests are all boilerplate.  Equifax has not quantified the purported burden of Plaintiff's requested discovery, and has not quantified the burden in terms of the number of documents, the number of pages, the number of people, the number of hours, or the amount of dollars.  Equifax has also made no effort to determine the number of people whose claims are at stake in this litigation.

Equifax's claims of burden are should be deemed waived and/or found to be insufficient to shield Equifax from its obligation to produce this plainly relevant information. The evidentiary record which does exist indicates that that electronic tools can likely be used to find relevant disputes. Further, Plaintiff is willing to assume the burden of reviewing all the complaints and disputes to identify those which are relevant to this case, an approach that has been adopted by at least one other court who compelled Equifax. *Valenzuela*, 2015 WL 1097315, at *1. The Court should compel the production of the consumer dispute and complaint information Plaintiff seeks.

## FACTS

During the financial crisis in 2008, Plaintiff experienced financial difficulty and fell behind on his mortgage. (Second Am. Compl. ¶ 30) (ECF No. 32.) The delinquency lasted at least from October 2008 through June 2011. (*Id.* ¶ 32.) Plaintiff eventually caught up on his mortgage and paid it off in 2014. (*Id.* ¶ 31.) Plaintiff alleges Defendant in 2017 reported obsolete account history information related to a Plaintiff's mortgage with Chase Bank. (*Id.* ¶ 36 and Credit Report Dated March 2017 attached to the Declaration of John G. Albanese ("Albanese Decl.") as Ex. A.) Plaintiff also alleges Equifax misleadingly omitted the Date of First Delinquency (the date on which Plaintiff was first delinquent in any delinquency period) from its report. (*Id.* ¶ 47 and Albanese Decl., Ex. A.)

Plaintiff alleges that Equifax violated the FCRA's obsolescence and accuracy provisions and that Equifax's FCRA violations were both negligent and willful. *See* 15 U.S.C. §§ 1681o, 1681n. Willfulness under the FCRA includes knowing or reckless

3

violations of the statute.  *Safeco,* 551 U.S. at 57 (holding that "willful" includes "reckless FCRA violations").

By agreement of the parties, discovery at this stage is limited to Plaintiff's individual claims.  (ECF No. 22.)  Plaintiff served discovery on Equifax seeking, among other things, information about consumer complaints or disputes related to reporting of obsolete information or the omission of the Date of First Delinquency.  (Plf.'s Req. for Production Nos. 22-24, 32-33, Albanese Decl., Ex. B.)[1]  Equifax responded to all five requests with the same boilerplate response:

> RESPONSE: Equifax objects to this Request as overbroad, not limited to the relevant time period, and seeks information irrelevant to Plaintiff's claims and disproportionate to the needs of this case, which involve the alleged reporting of Plaintiff's ostensibly obsolete delinquencies on his Chase account and alleged failure to report the date of Plaintiff's first delinquency on his Chase account.  Equifax further objects to this Request on the basis that it seeks the confidential identifying information of individuals who are not parties to this case, and possess no information relating to the claims about the reporting on Plaintiff's credit file.  Equifax does not maintain the requested documents in the ordinary course of business, and is not required to create documents to respond to discovery under the Federal Rules of Civil Procedure.  Any attempt to do so would involve greater resources that what could be recovered in this case.  Equifax will not produce documents in response to this Request.

(Def.'s Resp. to Plf.'s Req. for Prod. Nos. 22-24, 32-33, Albanese Decl., Ex. C.)

Plaintiff also included topics regarding consumer disputes in its Rule 30(b)(6) deposition notice to Equifax.  (Plf.'s Second Am. Rule 30(b)(6) Notice, Topic Nos. 10-11, Albanese Decl., Ex. D.)  Equifax's counsel indicated that Equifax would not produce

---

[1] There is a typo in Request No. 33.  It should read "All oral or written consumer complaints in the past five years wherein it was alleged that the consumer file omitted a Date of First Delinquency from an account."  The intent of the request was clear, however, and Equifax did not seek clarification regarding the request.

a witness to testify on those topics.  Plaintiff's Rule 30(b)(6) deposition has been put on

hold pending the resolution of this motion.

The parties exchanged meet and confer letters and engaged in two meet and confer

phone calls regarding Equifax's objections to producing or providing testimony regarding

consumer complaints and disputes but were unable to reach an accord.  At no point did

Equifax quantify the purported burden of production.  (Albanese Decl. ¶ 2.)

## ARGUMENT

### I.   LEGAL STANDARD

The scope of discovery is governed by Federal Rule of Civil Procedure 26(b)(1)

which states:

> Parties may obtain discovery regarding any nonprivileged matter that is
> relevant to any party's claim or defense and proportional to the needs of the
> case, considering the importance of the issue at stake in the action, the
> amount in controversy, the parties' relative access to relevant information,
> the parties resources, the importance of the discovery in resolving the
> issues, and whether the burden or expense of the discovery outweighs its
> likely benefit.  Information within this scope of discovery need not be
> admissible in evidence to be discoverable.

"The rules for depositions and discovery 'are to be accorded a broad and liberal

treatment.'"  *Credit Lyonnais, S.A. v. SGC International, Inc.*, 160 F.3d 428, 430 (8th Cir.

1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  While the text of Rule 26

changed in 2015, caselaw prior to 2015 is still instructive.  In *Hodges v. Pfizer Inc.*, No.

14-cv-4855, 2016 WL 1222229, at *2 (D. Minn. Mar. 28, 2016), the Court explained that

"the [2015] amendment [to Rule 26] 'restores the proportionality factors to their original

place in defining the scope of discovery' but '*does not change the existing*

*responsibilities of the court and the parties* to consider proportionality.'" *Id.* (emphasis added) (quoting the advisory committee's note to 2015 amendment, and proceeding to rely on multiple pre-2015 cases).

## II.   PLAINTIFF'S MOTION TO COMPEL SHOULD BE GRANTED.

### A. <u>Consumer disputes and complaints are relevant.</u>

In FCRA cases, consumer disputes and complaints are relevant to the issue of willfulness, even in individual cases.  Under the two-tiered structure of the FCRA, a plaintiff may recover his actual damages for negligent violations of the FCRA, 15 U.S.C. § 1681o, and may recover statutory damages of $100 - $1000 and punitive damages for willful violations other the FCRA.  15 U.S.C. § 1681n.  Willfulness under the FCRA encompasses both knowing and reckless violations of the statute.  *Safeco*, 551 U.S. at 69-70.

One way to prove a willful violation is to show that the Defendant knew it was violating the law as a result of consumer disputes and complaints but did not alter its conduct.  *See Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA); *Edeh v. Midland Credit Mgmt., Inc.* ("*Edeh* II"), 748 F.Supp.2d 1030 (D. Minn. 2010) aff'd, 413 F. App'x 925 (8th Cir. 2011) (finding other complaints to be relevant to "willfulness" under Telephone Consumer Protection Act:  "[I]information about whether Midland has previously been sued, sanctioned, or found liable for violating the TCPA is relevant to whether Midland's TCPA violation was knowing or reckless.")

Indeed, numerous courts have ordered Equifax to produce consumer complaints and disputes in other FCRA cases because of its relevance to willfulness. *See, e.g., Edeh I*, 2013 WL 1799006, at *2 (upholding order to compel production of complaints and noting that the "[i]nformation was relevant to the defendant's knowledge of the applicable statute and its actions in regard to the statute"); *O'Gara*, 2018 WL 513535, at *10 (ordering Equifax to produce information regarding other complaints and disputes); *Valenzuela,* 2015 WL 1097315, at *1 (finding that "[r]egardless of whether complaints filed by other consumers would be admissible at trial, similar complaints might, at the very least, lead to the discovery of admissible evidence related to the willfulness issue" and ordering Equifax to produce any and all FCRA complaints for the past five years); *see also Montelongo v. Trans Union, LLC*, 308 F.R.D. 132 (E.D. Penn. June 22, 2015) (compelling testimony regarding approximate number of lawsuits instituted against agency based on alleged violations of FCRA, as well as approximate consumer disputes during five year time period); Advisory Committee Note to the 2000 Amendment to Rule 26(b) (noting that other incidents of the same type can be discoverable).

The FCRA forbids the reporting of adverse information which is more than seven years old.  Section 1681c(a)(4) provides that "no consumer reporting agency may make any consumer report containing . . . accounts placed for collection or charged to profit and loss which antedate the report by more than seven years."  Section 1681c(a)(5), bars the reporting of "any other adverse item of information, other than records of convictions of crimes which   antedates the report by more than seven years."   15 U.S.C. § 1681c(a)(5).

For both sections, the seven year period is based on "the commencement of the delinquency." 15 U.S.C. 1681c(c)(1) ("The 7-year period … shall begin, with respect to any delinquent account that is placed for collection … , charged to profit and loss, or subjected to any similar action, upon the expiration of the 180-day period beginning on the date of the commencement of the delinquency."); Forty Years of Experience with the Fair Credit Reporting Act ("FTC Staff Summary") § 605(a)(5) item 1 ("[A] delinquent account that has neither been placed for collection, nor charged to profit and loss, may be reported for seven years from the date of the commencement of the delinquency.").[2] Importantly the seven year period *does not restart* when a consumer catches up on the loan because restarting the period would punish consumers for attempting to pay off their debts. *See* Ltr. Peeler to Sweeney, Federal Trade Commission (Aug. 8, 1979) (attached to the Second Am. Compl. as Ex. A) ("There is no exception to that prohibition for accounts which are subsequently paid and such an interpretation would have the effect of punishing consumers who repay their indebtedness while rewarding those who do not.") Given the importance of the date of first delinquency for determining how to calculate obsolescence, the FCRA requires creditors to report the date of first delinquency to the credit bureaus. 15 U.S.C. § 1681s-2(a)(5).

In credit reports issued in 2017, Equifax reported Plaintiff's Chase account with an account history of "Past Due" for certain months during the delinquency that commenced in September or October 2008. (Albanese Decl., Ex. A). Equifax failed to indicate that

---

[2] Albanese Decl., Ex. E, also available at
https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-

Plaintiff's delinquency commenced in 2008 by leaving the Date of First Delinquency field in Beseke's report blank.  (*Id.*)  Equifax did not fix these problems even after Plaintiff disputed the reporting of this outdated and obsolete information with Equifax.

Discovery has shown that Plaintiff's account was placed for collection internally at Chase and the prior loan servicer Washington Mutual during the delinquency.  (*See* Collection Notices, Albanese Decl., Ex. F.)[3]   Chase reported that the account was delinquent to Equifax and also reported a Date of First Delinquency during the delinquency period.  (Credit Report Dated January 10, 2011, Albanese Decl., Ex. G.)

Here, consumer complaints and disputes are relevant to whether Equifax willfully violated the statute.  Consumer disputes and complaints that Equifax was reporting obsolete account history, or misleadingly omitting the Date of First Delinquency on its reports in violation of the FCRA, would tend to show that Equifax's was on notice that it was violating the FCRA and that its procedures were insufficient for preventing the reporting of obsolete information.  For instance, even if Chase never informed Equifax that Plaintiff's account was in collections, consumer complaints about reporting obsolete information would be relevant as to whether Equifax's procedures for gathering information regarding the collection status of accounts reported by furnishers were reasonable.

---

reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf.
[3] These Notices of Collection Activity are a representative sample of the correspondence sent to Plaintiff from Washington Mutual/Chase.  In response to the parties' subpoenas, Chase produced 214 pages of similar notices sent to Plaintiff or his wife in 2009 through 2011 from Chase/Washington Mutual's "Collection Department."

In its meet and confer correspondence, Equifax asserted that the willfulness inquiry turns on whether Plaintiff can demonstrate that Equifax's conduct with respect to Plaintiff was inconsistent with an objectively reasonable interpretation of the FCRA. That is a question of law, not fact. Whether Equifax received complaints or disputes about its procedures is irrelevant if the procedures comport with an objectively reasonable interpretation of the statute. (Ltr. from Roper to Albanese at 2, Albanese Decl., Ex. H.) Equifax's letter misstates the law. Willfulness is ultimately a fact question. *Taylor v. First Advantage Background Servs. Corp*, 207 F. Supp. 3d 1095, 1112 (N.D. Cal. 2016) ("Willfulness under the FCRA is generally a question of fact for the jury.") (quoting *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1211 (C.D. Cal. 2007)); *Hammer v JP's Southwestern Foods, L.L.C.*, 739 F. Supp. 2d 1155, 1167 (W.D. Mo. 2010) (citing cases); *Lenox v. Equifax Info. Servs. LLC*, No. CIV. 05-1501-AA, 2007 WL 1406914, at *6 (D. Or. May 7, 2007) ("[T]he determination as to whether defendant's action or inaction rises to the level of willfulness so as to violate the statutory obligations of the FCRA is also a question of fact.").

While Equifax may rely on a "reasonable interpretation" defense to argue that its conduct was in accord with a reasonable statutory interpretation, that is only *one* way that Equifax may attempt to *defend* the suit. The scope of Plaintiff's discovery is not coextensive with the scope of Equifax's defenses. Instead, Plaintiff bears the burden of proof on the issue of willfulness, and is entitled to pursue evidence showing that Equifax's conduct was in knowing violation of the FCRA (because consumer complaints informed it that its conduct was unlawful) and/or that Equifax's conduct was reckless

(because consumer complaints demonstrated a risk of illegality and Equifax persisted nonetheless.)  Moreover, even if Equifax was entitled to dictate the scope of discovery by choosing its defenses, Equifax has yet to do so.  Equifax has declined thus far to inform Plaintiff what "reasonable interpretation" of the statute it intends to offer, or when it adopted such an interpretation.  *See Milbourne v. JRK Residential Am., LLC,* 202 F. Supp. 3d 585, 591 (E.D. Va. 2016) ("To take advantage of the 'objectively reasonable interpretation' safe harbor, *Safeco* requires that the defendant have 'adopt[ed]' and acted on an interpretation of the statute."); *see also FTC v. Colgate-Palmolive, Co.*, 380 U.S. 374, 393 (1965) ("[O]ne who deliberately goes perilously close to an area of proscribed conduct [takes] the risk that he may cross the line.")

Plaintiff has the burden to prove that Defendant acted willfully.  *See Smith v. LexisNexis*, 837 F.3d 604, 611 (6th Cir. 2016) (concluding there was no willfulness, and considering as a factor that the plaintiff had pointed to "no evidence that other individuals had lodged complaints similar to the plaintiff's").  Equifax has contested willfulness, and complaints and disputes are relevant to that issue.  Equifax "cannot, on the one hand, block any discovery into the question of whether it acted willfully, and then, on the other hand, ask the Court to dismiss this action because [Plaintiff] has not discovered any evidence that it acted willfully."  *Edeh* II, 748 F. Supp. 2d at 1038.  Equifax should be compelled to produce the requested information.

**B. Equifax's other objections are waived and lack merit.**

  *1. Equifax's Objections are Boilerplate and Should Be Deemed Waived.*

Equifax's boilerplate objections should be deemed waived because they lack specificity.  Despite its clear obligation to do so, Equifax has made no effort to quantify the purported burden it will incur in producing the requested information, or even to describe the quantity of the information it would be required to review to identify relevant disputes.  Nor has Equifax provided any basis whatsoever for its bold statement that producing the information Plaintiff has requested would "involve greater resources that what could be recovered in this case."  Instead, Equifax has presented mere boilerplate objections, generically asserting that the discovery Plaintiff seeks is disproportionate and burdensome.  Equifax's practice of making only boilerplate objections has caused it to lose discovery disputes in this District before.

> "[B]oilerplate objections are unacceptable." *Kooima v. Zacklift Intern. Inc.,* 209 F.R.D. 444, 446 (D.S.D.2002). "The party resisting discovery must show specifically how each interrogatory or request for production is not relevant or how each question is overly broad, burdensome or oppressive." *Id.* (citing *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.,* 198 F.R.D. 508 (N.D.Iowa 2000)); *see also* Fed.R.Civ.P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity.") Fed.R.Civ.P. 34(b)(2)(C) ("An objection to part of a request must specify the part and permit inspection of the rest."). As such, Equifax's general objections to the Second Set of Interrogatories and the Second Request for Production of Documents are overruled. Equifax shall supplement its discovery as to these discovery requests and produce relevant discovery it was withholding based on these general objections.

*Edeh* I, 2013 WL 1749912, at *3.

Equifax's failure to substantiate its claims is in direct contravention of the Federal Rules, which require that objections be specific and tailored to the request at issue.  It is not fair to allow a Defendant to remedy defects in their original objection in response to a motion to compel.  Time and time again, courts have held that boilerplate objections are waived.  *See Jalin Realty Capital Advisors, LLC A Better Wireless, Nisp, LLC v. Rhythm Stone Media Grp. LLC*, No. CV 11-165 (JRT/LIB), 2012 WL 12895689, at *3-4 (D. Minn. Feb. 22, 2012) ("Objections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections."); *Fischer v. Forrest*, No. 14CIV1304, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) ("[T]he responses to requests 1-2 stating that the requests are 'overly broad and unduly burdensome' is meaningless boilerplate. Why is it burdensome? How is it overly broad? This language tells the Court nothing."); *Johnson v. Neiman*, No. 09CV0689, 2010 WL 3081472, at *1 (E.D. Mo. Aug. 5, 2010) (striking "unsubstantiated, boilerplate objections"); *Liguria Foods, Inc. v. Griffith Lab., Inc.*, 320 F.R.D. 168, 187 (N.D. Iowa 2017) ("the idea that such general or 'boilerplate' objections preserve any objections is an 'urban legend.'"); *Sobol v. Imprimis Pharm.*, No. CV 16-14339, 2017 WL 5035837, at *4 (E.D. Mich. Oct. 26, 2017) ("boilerplate objections are legally meaningless and amount to a waiver of an objection"); *Strategic Mktg. & Research Team, Inc. v. Auto Data Sols., Inc.*, No. 15-CV-12695, 2017 WL 1196361, at *2 (E.D. Mich. Mar. 31, 2017) ("Boilerplate or generalized objections are tantamount to no objection at all and will not be considered by the Court."); *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 358 (D. Md. 2008) ("[B]oilerplate objections that a request for discovery is 'over[broad]

and unduly burdensome, and not reasonably calculated to lead to the discovery of material admissible in evidence,' persist despite a litany of decisions from courts, including this one, that such objections are improper unless based on particularized facts.")

The unfairness of boilerplate objections is particularly apparent in circumstances such as this one, where Equifax's failure to substantiate the purported burden hinders Plaintiff's ability to modify his request or propose less burdensome methodologies for obtaining what he needs. "A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment. Failing to state objections in a more detailed fashion than they were presented here makes it virtually impossible to determine the supposed burden in the "realistic way" advised by the 2015 comments to Fed. R. Civ. P. 26(b)(1), which require the parties to consider "[c]omputer-based methods of searching large volumes of electronically stored information."

2. *Equifax's Claim that the Requested Documents Do Not Exist is Not Credible and Equifax Should Be Required to Either Search for Relevant Disputes or to Allow Plaintiff to Search.*

Equifax states it "does not maintain the requested documents in the ordinary course of business, and is not required to create documents to respond to discovery under the Federal Rules of Civil Procedure." It is demonstrably false that Equifax does not keep records of the disputes it receives. Equifax produced information relating to Plaintiff's dispute in discovery in this case. (Automated Consumer Dispute Verification, Albanese

Decl., Ex. I.)  Equifax's own public filings indicate that dispute data, including copies of individuals identifying documents, such as social security cards, was among the data that as compromised during Equifax's recent data breach.  (Equifax Inc. Form 8-K Statement, Albanese Decl., Ex J.)  And, Equifax has been compelled to produce information related to disputes or complaints in other cases such as *Edeh, O'Gara* and *Valenzuela*.

It appears that what Equifax's claim that it "does not maintain" the requested records really means is that Equifax does not categorize disputes related to obsolescence or the omission of a Date of First Delinquency *ex ante*.  What Equifax appears to suggest is that because it does not maintain a unitary document which contains only the disputes that are relevant in this lawsuit, it does not have to produce any dispute information.  Instead, it maintains all its disputes in databases, apparently undifferentiated along lines which would allow Equifax to identify relevant disputes at the push of a button.  So, like virtually every other defendant in litigation, Equifax will be required to review information it maintains in order to identify the specific documents that are *relevant* to this case.  Equifax's decision to maintain all of its consumer disputes in some uncategorized and apparently difficult-to-search database should not shield Equifax from producing relevant discovery.  *Briddell v. Saint Gobain Abrasives Inc.*, 233 F.R.D. 57, 61 (D. Mass. 2005) ("Courts have been loathe to reward (and possibly encourage) poor record keeping by shielding companies with inefficient recording methods from discovery.")

Courts frequently encounter circumstances where Defendants must search databases in order to cull relevant information.  "Courts have long recognized that defendants may be required under the Federal Rules to create computer programs

to search an existing database for relevant information." *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 243 (N.D. Ohio 2017); *Anti–Monopoly, Inc. v. Hasbro, Inc.*, 1995 WL 649934, at *2 (S.D.N.Y. Nov. 3, 1995) ("The law is clear that...the producing party can be required to design a computer program to extract the data from its computerized business records..."). The *Meredith court* relied on the following example, *Apple Inc. v. Samsung Electronics Co. Ltd.*, No. 12–CV–0630–LHK (PSG) 2013 WL 4426512, at *2–3 (N.D. Cal. Aug. 14, 2013) in which the court noted:

> what emerges from the parties' arguments is that Apple does have financial databases that it could query to generate at least some of the reports sought by Samsung. While this court has held that a party should not be required to create completely new documents, that is not the same as requiring a party to query an existing dynamic database for relevant information. Courts regularly require parties to produce reports from dynamic databases, holding 'the technical burden ... of creating a new dataset for the instant litigation does not excuse compelling production.

(internal citations omitted).

Equifax is plainly able to search its own dispute data. For example, in its most recent quarterly filing with the SEC, Equifax searched all of the documents it had received from consumers through its online dispute portal and quantified the precise number of driver's licenses, social security/taxpayer ID cards, passports and other government identification cards that were compromised. (Equifax Form 8-K Statement, Albanese Decl., Ex. J.) Similarly, in *Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 497 (E.D. Pa. 2009), Equifax was able to identify 11,839 individuals in Pennsylvania who had disputed items of public record information and to whom it had sent a particular form letter.

In this case, the dispute documents that Equifax produced about Plaintiff have text which can be presumably searched to identify phrases that are indicative of the nature of Plaintiff's dispute.  (Albanese Decl., Ex. I.)  For example, the documents Experian produced about Plaintiff include the phrases "re-aging" and "first delinquency." Equifax's comments include additional phrases, which may be standardized, such as "verify ….date of first delinquency."  There are also a variety of codes which are unexplained, but which may allow searches to be further refined.  Further, while Equifax has claimed that its *dispute* database is not readily searchable, its *consumer reporting* database clearly is searchable.  Indeed, the whole purpose of Equifax's consumer reporting database is to allow it to produce and sell reports meeting specific criteria. Equifax has not provided any explanation as to why it would not be feasible for Equifax to produce all disputes associated with a consumer whose consumer reporting file indicates they are a potential class member, *i.e.*, disputes from consumers as to whom Equifax is in possession of data showing a Date of First Delinquency which precedes the date of a report issued by Equifax during the class period by more than seven years. Imposing this single condition on the disputes produced would certainly substantially narrow the volume of data Equifax was required to produce.

Moreover, Plaintiff's requests encompass lawsuits filed against Equifax.  Equifax cannot claim that it does not maintain records of lawsuits filed against it.  *See Polycarpe v. Seterus, Inc.*, 2017 WL 2257571 (M.D. Fla. May 23, 2017) ("Logic suggests that Defendant has copies of the complaints and amended complaints filed against it, and that

the effort and expense for Defendant to produce this information will be less than Plaintiff will incur to search every jurisdiction in which Defendant has done business.")

   *3.  Plaintiff's Requests are Proportional*

   In considering the proportionality of a discovery request, courts must consider "the importance of issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' relative resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."   Fed. R. Civ. P. 26(b)(1).   It is Defendant's burden to demonstrate that a discovery request is disproportionate to the needs of the case.  *See Spuhler v. STTE Collection Servs., Inc.*, No. 16-CV-1149, 2017 WL 3723603, at *3 (E.D. Wis. May 1, 2017) ("[W]hile Defendant has shown that there will be some burden in complying with Plaintiffs' requests, it has not met its burden of showing that compliance outweighs the benefit of production.").   In order to satisfy this burden, Defendant "must provide sufficient detail regarding the time, money and procedures required to produce the requested documents."  *Pham v. Wal–Mart Stores, Inc.,* No. 2:11-cv-1148, 2011 WL 5508832, at *3 (D. Nev., Nov. 09, 2011).  "The fact that the production of documents will be time consuming and expensive is not ordinarily a sufficient reason to refuse to produce material if the requested material is relevant and necessary to the discovery of admissible evidence."  *Shaw v. Experian Info. Sols., Inc.*, 306 F.R.D. 293, 301 (S.D. Cal. 2015).

While the parties have agreed to engage in early summary judgment motions as to Beseke's individual claims, this case is pled as a class action. Plaintiff has averred that Defendant has produced millions of consumer reports during the class period, and that many of those individuals are class members. (ECF No. 8 ¶58). Equifax's blanket denial of that entire allegation, which also includes a denial of the fact that Equifax has produced millions of consumer reports (ECF No. 14 ¶ 58) is not credible. Equifax has made no representations about what it believes the size of Plaintiffs potential proposed class to be, and it is "Equifax's burden to establish the disproportionality of these requests." *O'Gara*, 2018 WL 513535, at *10. Accordingly, it is difficult to assess the relative cost (which Equifax has not quantified) with the amount in controversy (which Equifax has also not quantified.)

Equifax's decision to make only boilerplate objections makes the issue of proportionality more difficult than it should be. However, as to the aspects of proportionality which can be assessed, however, the analysis weighs in Plaintiff's favor. Absent a showing of willfulness, Plaintiff and the class will not be able to recover the statutory damages to which they are entitled. To put it bluntly, the monetary value of the claims in this litigation largely stands or falls with the issue of willfulness, rendering the issue of willfulness one which is highly important "in resolving the issues" at stake. Thus, both the factor of importance with respect to the amount in controversy and the factor of importance to the issues in litigation weigh in Plaintiff's favor.

The parties' relative access to information and relative resources also weigh in Plaintiff's favor. Much of the information Plaintiff seeks is not available from any other source. And, producing this information is unlikely to impose a meaningful strain on Equifax's resources. According to its most recent SEC filing, Equifax generated $865 million in revenue during the first quarter of 2018 alone, and has $249 million in cash and cash equivalents on hand. (Equifax Inc. 10-Q Statement, Albanese Decl., Ex. K.)

Nor has Equifax made a compelling showing that the burden of any production would outweigh its benefit. Courts routinely allow ESI database discovery even where it will take a long time to produce the data. *See, e.g., Gonzales v. Google, Inc.*, 234 F.R.D. 674 (N.D. Cal. 2006) (allowing ESI discovery where producing party claimed it would take eight full days of engineering time to produce the data that the government sought); *Mervyn v. Atlas Van Lines. Inc.*, 2015 WL 12826474, at *6 (N.D. Ill. Oct. 23, 2015) (requiring production even where producing party claimed it would take a week to create the script, a week to run the script, and a week to check the results). Even if there is a burden associated with Defendant being required to search its own databases, any burden here is illusory and unnecessary. Plaintiff is willing to shoulder the burden of reviewing the entire universe of dispute and complaint records in order to identify the relevant disputes. *See Valenzuela*, 2015 WL 1097315, at *2 (ordering Equifax to produce complaints but noting that "Equifax shall not be required, however, to search those complaints and identify those that allege violations of the specific subsections that are at issue in this case. If Equifax believes that any of the requested documents implicate

confidentiality, trade secrets, or privilege concerns, it may address those concerns in a manner compliant with FRCP 26(b)(5) & (c).")

    *4.  Equifax's Other Objections Lack Merit*

Equifax also complains that Plaintiff's request is not "limited to the relevant time period" but does not specify what it believes the relevant time period to be.  Plaintiff's request seeks documents dating back no further than January 1, 2011, which is a little more than six and a half years before the complaint was filed on October 12, 2017. While Plaintiff's proposed class period only goes back two years, older complaints are highly relevant on the issue of willfulness because they demonstrate that Defendant was aware of a persistent problem but continued to choose to ignore it.  If, for example, Equifax's records demonstrate that consumers were complaining in 2011 that Equifax was illegally reporting obsolete account information, and Equifax persisted in reporting that information through the present, those disputes are relevant to Equifax's willfulness. Notably, the court in *Valenzuela* required Equifax to produce five years' worth of complaints.  *See also McDonough v. Anoka Cnty.*, 799 F.3d 931, 946 (8th Cir. 2015) ([A]llegations … that do not themselves constitute violations because they are barred by the statute of limitations still may be considered"); *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002) (stating that plaintiff may use pre-limitations-period acts as background evidence in support of a timely claim); *U.S. EPA v. City of Green Forest,* 921 F.2d 1394, 1409 (8th Cir.1990) ("[T]here is no rule that automatically excludes evidence pre-dating a statute of limitations period.").

Finally, Equifax's objection that the request seeks confidential information regarding consumers not party to this case is without merit. There is a protective order in place that protects dissemination of confidential information (ECF No. 25) and Plaintiff would be willing to agree to further protections if necessary. Other courts have rejected confidentiality as a legitimate basis for a defendant failing to produce information. "Confidentiality is not a basis for withholding information in the ordinary course if it can be protected by a protective order." *Covad Commc'ns Co. v. Revonet, Inc.*, 258 F.R.D. 5, 11 (D.D.C. 2009).

## CONCLUSION

Consumer complaints and disputes similar to Plaintiff's claims are relevant, proportional, and should be produced. Plaintiff's motion should be granted.

Respectfully submitted,

Dated: May 11, 2018

**BERGER & MONTAGUE, P.C.**

By:   /s/ John G. Albanese
E. Michelle Drake, # 0387366
John G. Albanese, # 0395882
43 SE Main Street
Minneapolis, MN 55414
emdrake@bm.net
jalbanese@bm.net
Telephone: 612-594-5999
Facsimile: 612-584-4470

and

**GOOLSBY LAW OFFICE, LLC**

John H. Goolsby, #0320201
475 Cleveland Ave. N, Suite 212
Saint Paul, MN 55104

Telephone:  (651) 646-0153
jgoolsby@goolsbylawoffice.com

**Attorneys for Plaintiff and the Classes**