UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kurt A. Beseke, individually and on behalf of those similarly situated, | Case No. 17-cv-4971-DWF-KMM |
| Plaintiff, | |
| v. | **ORDER** |
| Equifax Information Services, LLC, | |
| Defendant. | |

Plaintiff Kurt Beseke filed a Motion to Compel, seeking production of certain documents from defendant Equifax Information Services, LLC ("Equifax"). (ECF No. 33.) For the reasons stated below, Mr. Beseke's motion is granted in part and denied in part.

## I.   Background

This discovery dispute arises out of a claim of violations of the Fair Credit Reporting Act ("FCRA"). Mr. Beseke alleges that Equifax violated the FCRA's obsolescence and accuracy provisions when it allegedly reported outdated account history information related to Mr. Beseke's mortgage, and when it allegedly omitted a Date of First Delinquency. (Second Am. Compl., ECF No. 32, ¶¶ 36, 47.) This action involves Mr. Beseke's individual claims as well as putative class claims, but in the interest of efficiency, the Court adopted a two-phase discovery schedule for the case. Phase one permits discovery only with respect to Mr. Beseke's individual claims. If the suit survives summary judgment, then phase two discovery, limited to the class claims, will begin. (Pretrial Scheduling Ord., ECF No. 22.)

### A.   Discovery Requests

Mr. Beseke served Equifax with a lengthy request for production, of which five requests—numbers 22–24, and 32–33—are the subject of his motion. The disputed

requests are easily split into two categories: requests for information related to similar lawsuits (22–24), and requests for information related to similar consumer complaints (32–33). (Decl. of John G. Albanese, Ex. B.) With respect to similarly situated lawsuits, Mr. Beseke seeks the following:

> **REQUEST NO. 22** All complaints (civil, regulatory, or administrative) or disputes that you have received since January 1, 2011 that involve allegations of reporting obsolete information beyond the statutorily permitted time under the FCRA.
>
> **REQUEST NO. 23** All complaints (civil, regulatory, or administrative) that you have received since January 1, 2011 that involve allegations of failing to report the Date of First Delinquency.
>
> **REQUEST NO. 24** All dispute resolutions, judgments, final orders, or settlements reached by you with regard to any complaint or dispute referenced in Request No. 22 or 23.

(*Id.*) The disputed requests for production involving similarly situated consumer complaints are:

> **REQUEST NO. 32** All oral or written consumer complaints in the past five years wherein it was alleged that a consumer file contained outdated information beyond the time allowed to be reported under the FCRA.
>
> **REQUEST NO. 33** All oral or written consumer complaints in the past five years wherein it was alleged that a consumer file contained a Date of First Delinquency was omitted from an account.

(*Id.*) Equifax provided the same response to each of these requests, arguing that the requests were overbroad, irrelevant, and unduly burdensome. (Albanese Decl. Ex. C.) Equifax explained in its response to Mr. Beseke's motion that it does not maintain the information he seeks in a readily accessible format, and that accessing this information would require an extraordinary amount of time and manpower.

After the initial round of briefing on this issue, Mr. Beseke deposed Alicia Fluellen, an Equifax Operations Strategist, whose declaration explaining Equifax's database systems and searchability features was included as an exhibit in support of Equifax's memorandum in opposition to Mr. Beseke's motion. (*See* May 25, 2018 Declaration of Meryl Roper, Ex. B.)  A second round of supplemental briefing followed the deposition of Ms. Fluellen.  In his reply, Mr. Beseke requested that this Court permit him to depose Brandon Walker, Equifax's Senior Director of Technology, whose declaration was included as an exhibit to Equifax's second response. (*See* July 27, 2018 Decl. of Meryl W. Roper, Ex. A.)  Throughout this extensive briefing, Equifax detailed its database's systems and search capabilities.

### B. Equifax's Electronically Stored Information

When consumers contact Equifax to dispute an item on their credit report, the dispute is assigned a code based on the consumer's description and the Equifax agent's interpretation of the dispute. (May 25, 2018 Roper Decl., Ex. B, ¶ 4.)  Most notably, Equifax does not have a single code that is specific to obsolescence-related disputes; instead such disputes could potentially be identified with any one of five different codes. (*Id.* ¶ 6.)

Even if Equifax did have a specific code, the manner in which the information is retained is not easily searchable. (*Id.* ¶ 5.)  The relevant database used by Equifax is called ACIS, which contains consumer dispute information. (*Id.* ¶ 5.)  ACIS is designed to allow access to all of a single consumer's disputes via a confirmation number or personal identifying information, but not to multiple consumers' disputes at the same time. (July 27, 2018 Roper Decl., Ex. A ¶ 5.)  Because of this functionality, it cannot be searched like an internet search service using a search bar and a keyword.  Instead, a programmer would need to design a query that could be used to search for disputes with the potentially relevant codes. (May 25, 2018 Roper Decl., Ex. B, ¶ 8.)  This labor-intensive process would require testing of the query within the database to ensure that running the query does not interfere with Equifax's normal database usage. (*Id.*)  Equifax estimated that, using this procedure, a query could take several days or weeks to be run through the entire database. (*Id.* ¶

9.) Equifax asserts that for one of the five codes that disputes similar to Mr. Beseke's could belong to, there were 285,566 unique ACIS cases in just one month. (*Id.* ¶ 12.) Mr. Beseke is seeking information dating back to January 2011, which could result in a shockingly enormous volume of unique ACIS cases. Unfortunately, the difficulty goes beyond the unmanageable number of potentially relevant cases. Because there is no code related specifically to obsolescence claims, manual review of the search results would be necessary to determine which specific claims are actually similar to Mr. Beseke's. (*Id.* ¶ 10.) Ultimately, Equifax predicts months of production and review with no guarantee of identifying customers with disputes similar to Mr. Beseke's. (*Id.* ¶ 13.)

Not everything in ACIS is completely unsearchable, however. Automated Consumer Dispute Verification ("ACDV") forms are stored in ACIS. (Pltf's Supp. Letter Brief, Ex. 2, Deposition of Alicia Fluellen, 57:17–19.) These forms contain a field called "FCRA Relevant Information," which is not automatically generated but is instead filled in by consumers (if the dispute is filed online) or Equifax's agents (if the dispute is filed over the phone. (July 27, 2018 Roper Decl., Ex. A ¶ 7; *see also* Fluellen Dep., 63:12–64:10.) This particular field in ACDVs is searchable using "wildcard" searches. A wildcard search involves the use of a wildcard character such as the percentage symbol (%) as a placeholder for any number of characters. *See The Sedona Conference Best Practices Commentary on the Use of Search & Information Retrieval Methods in E-Discovery*, 15 Sedona Conf. J. 217, 256–57 (2014). For example, a search term %age% would return results including the string of characters "age" anywhere in the word, such as "damage," "agent," or "pager," in addition to the word "age." *Id.* While useful, wildcard searches can result in false hits (for instance, looking for results regarding the age of a claim, but instead finding a complaint about a customer service agent), and they will not capture relevant results that contain typos (such as "aeg" when "age" was intended).

Against this complex factual backdrop, the Court determines that Equifax should be required to produce some of the requested discovery. However, because

access to much of the electronically stored information is nearly impossible, the Court will limit discovery into Equifax's ESI.

## II. Analysis

Rule 26(b) of the Federal Rules of Civil Procedure authorizes a broad and liberal scope of discovery. *E.g.*, *Hofer v. Mack Trucks, Inc.*, 981 F.3d 377, 380 (8th Cir. 1992). Generally, any matter "relevant and reasonably calculated to lead to the discovery of admissible evidence" is discoverable. *Id.*; *see also Shukh v. Seagate Technology, LLC*, 295 F.R.D. 228, 237 (D. Minn. 2013) ("Information is generally discoverable unless it is clear that the information sought has no bearing upon the subject matter of the action." (quotation omitted)). However, the liberality of discovery should not lead to a "fishing expedition." "Some threshold showing of relevance must be made" before requiring parties to produce information. *Hofer*, 981 F.3d at 380.

Not only must information sought in discovery be relevant, it must also be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In determining proportionality, courts consider numerous factors, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, and importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Specifically regarding electronically stored information, discovery need not be produced where the information is "not reasonably accessible because of undue burden or cost." Fed. R. Civ. P.(b)(2)(B); *see also Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, 247 F.R.D. 567, 569 (D. Minn. 2007). If the opponent of ESI discovery establishes that the information is not reasonably accessible, it is only discoverable if the requesting party demonstrates good cause. Fed. R. Civ. P.(b)(2)(B); *Best Buy*, 247 F.R.D. at 570.

Finally, magistrate judges have broad discretion over matters of discovery. *Shukh*, 295 F.R.D. at 238. And "the court must limit the frequency or extent of discovery otherwise allowed by these rules of by local rule if it determines that…the proposed discovery is outside the scope permitted by [the Rules]." Fed. R. Civ. P. 26(b)(2)(C). Courts may make these limitations "[o]n motion or on its own." *Id.* Against this legal backdrop, the Court determines that, while the sought-after

discovery is relevant, some limitations are necessary to keep the discovery proportional to the needs of the case.

### A.   Relevance of the Requested Information

The Court determines that other complaints and other lawsuits filed against Equifax by similarly situated individuals may be relevant to the current action because they may inform the Court's decision regarding whether Equifax's alleged violation of the FCRA was willful. As a threshold matter, the Court declines to decide at this stage whether willfulness must be decided as a matter of law or fact. This is a question more appropriately suited to the summary judgment phase of the case. And the Court need not definitively decide this question in order to answer the relevancy question at hand.

It is clear that complaints and problems similar to these alleged by Mr. Beseke are potentially relevant under the liberal definition provided by the Rules. The Advisory Committee Notes to the 2000 Amendments of Rule 26(b) specifically contemplate "other incidents of the same type…could be properly discoverable." Similarly, a number of cases support Mr. Beseke's argument that complaints and lawsuits regarding similar cases are relevant. This Court affirmed a magistrate judge's ruling that compelled a defendant to produce past complaints related to the alleged conduct. *Edeh v. Equifax Information Servs., LLC*, No. 11-cv-2671 (SRN/JSM), 2013 WL 1799006 at *1–2 (D. Minn. Apr. 29, 2013). And other courts have recognized that other lawsuits, regardless of their admissibility at trial, are still likely to lead to the discovery of admissible evidence. *O'Gara v. Equifax Information Servs., LLC*, 16-cv-1237 (TWP/MPB), 2018 WL 513535 at *9 (S.D. In., Jan. 23, 2018); *see also Valenzuela v. Equifax Information Servs., LLC*, 13-cv-2259 (PHX/DLR), 2015 WL 1097315 at *1–2 (D. Ariz., Mar. 5, 2015) (ordering defendant to produce copies of similar complaints).

### B.   Burden

Of course, relevancy is not the end of the inquiry regarding the scope of discovery. The proportionality of the discovery to the case, particularly the burden of gathering the proposed discovery compared to its potential benefit, must also be considered. When burden is considered, it is clear that although relevant, not all of Mr. Beseke's sought-after discovery is appropriate. Specifically, the Court finds that Equifax must produce information relating to other lawsuits, but that Equifax should

not be compelled to produce all similar consumer complaints due to the burden it would have on Equifax.

The Court first finds that producing information relating to lawsuits similar to Mr. Beseke's is not so burdensome to Equifax so as to make the production of the information disproportionate to the needs of the case. It is the opponent of production that bears the burden of demonstrating the disproportionality of a discovery request. *See, e.g.*, *O'Gara*, 2018 WL 513535 at *10. Equifax has not made such a demonstration here. Although Equifax argues that producing formal litigation complaints and other documents would be burdensome, it fails to demonstrate how. Instead, Equifax merely concludes that because it does not maintain a central database for all lawsuits, and that its attorneys would have to review the litigation documents before producing them, production is an undue burden. Because Equifax has failed to discuss this in any greater detail, and in light of Equifax's significant resources and sophistication in litigation, the Court cannot conclude that it has successfully demonstrated that the requests are unduly burdensome. *See id.*

With respect to the consumer complaints, however, the balance tips in the other direction. The Court concludes that Equifax has demonstrated that the full production of the documents sought by Requests 32 and 33 would be unduly burdensome and disproportionate to the needs of the case. It is clear that creating a query, searching the entire ACIS database and then manually reviewing the results would take countless hours, the cost of which would be exorbitant. Equifax has shown that responding to Mr. Beseke's discovery requests as originally written would result in the production of hundreds of thousands—if not millions—of documents. Further, these documents are not in a readily accessible format. *See* Fed. R. Civ. P.(b)(2)(B).

However, the Court is also mindful that Equifax is not a small business unfamiliar with the intricacies of litigation, and it agrees with the conclusion of other district courts that permitting "a defendant whose business generates massive records to frustrate discovery by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of the discovery rules." *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976); *accord Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 321 n.68 (S.D.N.Y. 2003). Therefore, the Court believes that requiring Equifax to produce a narrower set of materials is appropriate in this case.

Equifax can use wildcard searches within the open-text field titled "FCRA-relevant information" in the ACDV forms contained within its ACIS database. (July 27, 2018 Roper Decl., Ex. A ¶ 7.) Equifax has not argued that the results of these wildcard searches will be inaccessible. Indeed, Equifax's only burden argument with respect to this particular method of search is that wildcard searches will necessarily capture false hits, and that it may not perfectly capture every relevant document. The possibility of returning false hits does not create a burden on Equifax that is undue, and any electronic discovery method risks missing a relevant document. Equifax can determine an appropriate list of wildcard search terms that are calculated to minimize these risks. Because Equifax's system does not allow for easy segregation of claims related to a single code, and because the 016 code does not fully capture disputes related to obsolescence claims, the Court will not require limitation of discovery to a single code or group of codes. However, it encourages the parties to meet and confer to determine if limiting the wildcard searches to a certain group of codes is appropriate.

Additionally, the parties must work together to ensure that the searches used are narrowly tailored to identify claims with substantial similarity to those of Mr. Beseke.

Finally, the discovery window for these searches should be reduced to a more reasonable period than that requested by the plaintiffs in an effort to keep this aspect of the production proportional to the needs of the litigation. Because Mr. Beseke alleges events that occurred in 2017, the searches required should begin on January 1, 2014.

### III. Conclusion

Based on the foregoing, **it is hereby ordered**:

1. Mr. Beseke's Motion to Compel (ECF No. 33) is **GRANTED IN PART AND DENIED IN PART**. Equifax must update its responses to Document Requests 22–24 and 32–33 in accordance with this Order within fourteen (14) days.

8

Date: October 18, 2018                               *s/ Katherine Menendez*
                                                    Katherine Menendez
                                                    United States Magistrate Judge