## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

---

Kurt A. Beseke, individually and on behalf
of those similarly situated,

               Plaintiff,

v.

Equifax Information Services LLC,

               Defendant.

Case No. 17-cv-4971-DWF-KMM

**PLAINTIFF'S MEMORANDUM IN
SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT**

---

## INTRODUCTION

This case is about Defendant Equifax Information Services, LLC's ("Equifax"),

reporting of a delinquency that was too old, in violation of the Fair Credit Reporting Act

("FCRA"). Specifically, this case involves Equifax's standard policies and procedures, in

violation of 15 U.S.C. § 1681c, that punish consumers who catch up on their debts as

compared to consumers who never pay back their debts. Had Plaintiff never caught up on

his debt, Equifax would have purged the data six years and eleven months from the

commencement of the delinquency pursuant to its policy and in accordance with the FCRA.

However, because Plaintiff caught up on and repaid his debt, Equifax reported Plaintiff's

derogatory trade history for longer than the allowable period.

The FCRA generally prohibits reporting of adverse information that is beyond a

certain age. When a consumer falls behind on paying a creditor, the consumer is delinquent

until the consumer catches up on the debt. A delinquency can last for months or years but

1

cannot be reported for more than seven years after it first begins (this period is extended to seven and one-half years for accounts sent to collections). [1]  15 U.S.C. § 1681c(c).

The FCRA does not distinguish between accounts where the consumer has caught up and accounts where the delinquency remains ongoing.  Nearly 40 years ago, the Federal Trade Commission ("FTC") confirmed that when a consumer catches up on a formerly delinquent debt, the consumer is still entitled to the obsolescence protections of the FCRA, meaning that no information about a delinquency that began more than seven years before the date of the report should appear in the report.  If the seven year period re-starts at the time of a subsequent payment and allows reporting back seven years without regard to when the delinquency preceding the payment began, consumers who paid their debts back would have more derogatory credit entries (including delinquencies that began more than seven years prior) than consumers who never pay back their debts (where the delinquency would stop being reported seven years after it began).  Over a decade ago, the Seventh Circuit warned Equifax that a payment on a formerly delinquent debt should not deprive the consumer of the FCRA's obsolescence protections.  *Gillespie v. Equifax Info. Servs., L.L.C.*, 484 F.3d 938, 942 (7th Cir. 2007).  Equifax, however, has ignored these unequivocal warnings and instead continues to punish consumers who pay off their debts.

---

[1] The FCRA has one obsolescence clause for accounts placed for collection or subject to similar action, and a different clause for delinquencies that do not become so severe as to be placed in collections or subject to similar action.  *See* 15 U.S.C. §§ 1681c(a)(4), 1681c(a)(5).  The general rule is that adverse information must be deleted after seven years. 15 U.S.C. § 1681c(a)(5).  For collection accounts, 180 days are added before the 7-year period begins, § 1681c(c)(1).

To illustrate Equifax's illegal policy, take two consumers, Consumer A and Consumer B.  Consumer A falls behind on his mortgage in October 2008 and never catches up.  Consumer B also falls behind on his mortgage in October 2008, and remains behind on his mortgage until June 2011.  Unlike Consumer A, in June 2011, Consumer B catches up and becomes current on his mortgage.  Consumer B remains current on his mortgage until the mortgage is paid off entirely in 2014.

When Equifax reports credit accounts, Equifax includes a variety of information including "Account History" which shows the monthly status of the account going back for nearly seven years.  In 2017, Equifax issues a consumer report on Consumer A.  Pursuant to Equifax's policy, Consumer A's mortgage is not included on the credit report because the delinquency began more than seven years prior, in October 2008.  Instead, Equifax purged the mortgage account from Consumer A's credit file because the delinquency commenced more than seven years prior to the report.

In 2017, Equifax issues a consumer report on Consumer B.  For Consumer B, pursuant to its policy, Equifax does report Consumer B's mortgage and includes "Account History" information showing that Consumer B was behind on his mortgage in 2010 and 2011 until he caught up in June 2011.  This is shown below:

Under Equifax's policy, Consumer A, who never caught up on his mortgage and never paid his debt, receives the benefit the FCRA's prohibition on reporting old information. On the other hand, for Consumer B, Equifax reports Consumer B's delinquent account history for a delinquency that commenced far beyond the period allowed by the FCRA for reporting old, adverse information. In other words, Consumer B, *who caught up and paid his debt*, is punished by Equifax for catching up on his debt.

Consumer B is Plaintiff Kurt Beseke. The facts regarding whether Equifax violated the FCRA's obsolescence policy for Plaintiff's formerly delinquent mortgage account are undisputed, straightforward, and demonstrate that Equifax violated the FCRA. Given the text of the statute, the FTC's guidance, and the Seventh Circuit's warning to Equifax in *Gillespie*, there is no reasonable interpretation of the FCRA that would allow for Equifax's conduct.

Plaintiff thus seeks summary judgment that Equifax willfully violated the FCRA's restrictions on reporting obsolete information.[2]

## BACKGROUND

### I.  Equifax Reports Plaintiff's Old, Derogatory Trade History.

During the financial crisis, Plaintiff fell behind on his mortgage with Washington Mutual, which was later acquired by Chase (the "Chase mortgage"). From at least October 2008 through July 2011, Plaintiff was continuously delinquent on his mortgage. During that period, Washington Mutual and Chase sent Plaintiff and his wife Patricia numerous

---

[2] Plaintiff is not seeking summary judgment on his other claims as there are disputed issues of fact.

collection letters, including those that stated that the letters were from "a debt collector" "attempt[ing] to collect a debt."  (Declaration of John A. Albanese ("Albanese Decl."), Ex. 1.)  Plaintiff eventually obtained a reverse mortgage and paid off the Chase mortgage. (Albanese Decl., Ex. 2 – Transcript of Kurt Beseke ("Beseke Dep."), 36:13-37:2.)

Defendant Equifax is a consumer reporting agency regulated by the Fair Credit Reporting Act.  (Second Amended Class Action Complaint, ECF No. 32 ("SAC"), ¶ 13; Defendant's Answer, ECF No. 42 ("Def.'s Ans."), ¶ 13.)  Equifax's "core" credit reporting database is known as "ACRO."  (Albanese Decl., Ex. 3 - Transcript of Margaret Leslie ("Leslie Dep."), 19:6-9.)  Creditors report various information to Equifax regarding credit accounts, including information Equifax calls the "date of first delinquency."[3]  The date of first delinquency is the creditor's representation of the first date in the current delinquency that a payment was missed.  (Leslie Dep. 65:4- 66:14).  During the period when Plaintiff was delinquent, Chase reported to Equifax that the mortgage was continuously delinquent with a "date of first delinquency" beginning at the latest in October 2008.[4]  (Leslie Dep. 67:20-70:17., and Leslie Dep. Ex. 50)

---

[3] The term "date of first delinquency" does not appear in § 1681c.  The statute instead refers to the "date of the commencement of the delinquency," indicating that subsequent consecutive months are not second and third, etc., delinquencies, but rather, continuations of a single delinquency.

[4] Right after the commencement of the delinquency, Chase reported that the delinquency commenced in September 2008.  (*See, e.g.,* Albanese Decl., Ex. 4, EIS-BESEKE-00130-31).  That date was later updated to October 2008.  Whether the delinquency began in September 2008 or October 2008 is irrelevant to any issue in this motion as Chase's reporting extended beyond seven years using either date.

Chase's reporting is shown by Equifax's historical records, which are called "frozen scans." A frozen scan is a monthly "snapshot" of Equifax's ACRO credit reporting database that reflects what was in the database at the time the snapshot was taken. (Leslie Dep. 43:6-22-44:10.). The frozen scan from July 2011 (set forth below) shows that Chase reported to Equifax that Beseke was continuously delinquent from October 2008 to June 2011. (Leslie Dep. 67:19-70:4 & Leslie Dep. Ex. 50.)



The "5" in the "M-5" code represents that the account was delinquent. (Leslie Dep. 74:13-76-9.) The "Metro 2 History" represents the payment history and the number of months

that plaintiff was behind in payments.  (Leslie Dep. 62:10-63:23.)   Credit disclosures obtained by Plaintiff from Equifax from the period of delinquency reflect Equifax's records and confirm that Chase reported to Equifax that Plaintiff was delinquent on his mortgage. (*See, e.g.*, Albanese Decl., Ex. 5).

If a consumer catches up on a delinquent debt, Equifax deletes the date of first delinquency and replaces it with the "date of last activity."  The date of last activity is the latest date "where activity has taken place on an account," such as a payment.  (Leslie Dep. 70:21-72:8.)  When an account goes from delinquent to current, Equifax deletes the prior date of first delinquency for the period when the loan was delinquent from its ACRO database.  (Leslie Dep. 103:10-104:20).[5]  However, Equifax does not delete the date of first delinquency from its frozen scans, meaning Equifax still has access to, and can determine, the date of first delinquency.

As shown in the below frozen scan, after Plaintiff caught up on his Chase Mortgage, around August 2011, Chase first began reporting Plaintiff's mortgage as current.  Chase reported a date of last activity of July 2011.  (Leslie Dep. 73:23-74:16 & Ex. 51.)

---

[5] In this exchange, Plaintiffs' counsel mistakenly refers to the incorrect dates.  As is clear from the transcript and the references to Exhibits 50 and 51, Plaintiff's counsel intended to refer to the time period of July and August 2011 rather than October and November 2011.



The "M-1" code indicates a current account and the "07/00/2011" date refers to the Date of Last Activity. (Leslie Dep. 71:9-72:8; 74:12-75:16.)

On or around March 2, 2017, Plaintiff obtained a credit disclosure from Equifax. The credit disclosure shows what Equifax was reporting about the Chase account as of March 2, 2017. (Leslie Dep. 37:9-38:21.) As shown below, Equifax reported the delinquent payment history stemming from the October 2008 delinquency in the "Account History" section of its report. (Albanese Decl., Ex. 6 - Transcript of Lisa Willis ("Willis Dep."), Ex. 14). An account history code of "4" represents that the payment was 120-149 days overdue. (*Id.* at BESEKE 0220; Leslie Dep. 42:12-43:5.) Equifax internal documents

refer to this type of late payment information as "Derogatory Trade History."  (Willis Dep. 52:18-53:11 & Ex. 19 at EIS-BESEKE 000023.)



The effect of this reporting was to ensure that creditors were aware that Plaintiff had previously been delinquent on his Chase account, a fact the creditors would not have known had Chase treated Beseke the way it treated borrowers whose accounts never became current again.

The FCRA generally prohibits the reporting of adverse information beyond the statutory obsolescence period of seven years.  15 U.S.C. § 1681c.  To comply with the FCRA's obsolescence requirements, Equifax uses the date of first delinquency in its live ACRO database to determine when to automatically purge a trade line from Equifax's database.  (Leslie Dep. 86:12-88:9)[6]  If an account is presently delinquent and has a date of first delinquency that is older than at least 6 years 11 months, then it will be purged. (Leslie Dep. 87:6-88:1.)  However, if an account is not presently delinquent, but like

---

[6] Equifax also has a data field entitled "Date of First Major Delinquency" which is used to indicate when an account is charged-off or sent to collections.  (Leslie Dep. 82:1-82:19.) The Date of First Major Delinquency, however, is not used is determine to timeframe in which to purge an account.  (*Id.*)

Plaintiff, had a period of delinquency with a subsequent catch up, the account remains on the report and the derogatory trade history within 6 years and 11 months of the report will remain. (Leslie Dep. 88:13-92:20.) This is true regardless of when the delinquency that continued until 6 years and 11 months prior began. This policy applies even if an account is reported as being placed for collections and then becomes current. (Leslie Dep. 172:12-177:4.) In other words, Equifax does not take advantage of the extra six months provided for accounts in collection.

As explained below, if Equifax had followed the FCRA's obsolescence requirements, the derogatory trade history stemming from Plaintiff's period of delinquency from October 2008-June 2011 would have been purged from Plaintiff's credit file no later than seven years and six months after the commencement of the delinquency in October 2008. Had Plaintiff never caught up on his debt, Equifax would have purged the data six years and eleven months from the commencement of the delinquency (September 2015) pursuant to its obsolescence policy. However, because Plaintiff caught up on and repaid his debt, Equifax continued to report Plaintiff's derogatory trade history. (Leslie Dep. 98:24-100:14.)

Plaintiff disputed the reporting of his Chase mortgage to Equifax in March 2017. In response to Plaintiff's dispute, Equifax did not change its reporting. (Willis Dep. 62:4-65:13 & Exs. 15-16.) During the time where the obsolete derogatory trade history appeared in Plaintiff's credit file, Equifax sold multiple credit reports regarding Plaintiff. This is shown by the inquiry section on Plaintiff's credit disclosures, which show the entities that accessed Plaintiff's credit file. (Willis Dep. 24:24-26:24 & Exs. 14, 17.)

Other consumers have disputed to Equifax that Equifax reports delinquencies beyond the period allowed by the FCRA.  In response to the court's order on Plaintiff's motion to compel, Equifax produced a spreadsheet setting forth disputes it had received regarding reporting of obsolete information.   The disputes included the following complaints from consumers:

- The date of the first late payment was June 2008 over 8 years ago, this account should be aged and remove from my credit report."
- This account has aged the required 7 Years as of Oct. 2015 since the first late payment occurred.  Please remove it from my credit report. Experian has already removed this account as of this month.
- This account was first delinquent on Jan 2007 and remained delinquent until loan modification was done September 2010. It has been current every [sic] since with no late payment.  There should be no late reporting. It has been over 7 years since first late.
- This account is over 7 years old from first delinquency. It should be removed from my credit report. First late payment was March 2008
- My First late payment was past 7 years ago.  This should have aged off my report.

Albanese Decl. Ex. 7.[7]

## II.    Procedural Background.

The SAC is the operative complaint.  This case has been bifurcated with discovery and motion practice on Plaintiff's individual claims proceeding before any class

---

[7] The dispute spreadsheet produced by Equifax contained over 200,000 entries.  Plaintiff has not done an exhaustive analysis of the disputes but is submitting a small sample of twenty disputes that appear to be challenging the reporting of obsolete late payment information similar to Plaintiff's claim here.  (Albanese Decl., Ex. 7.)  Due to the size of the entire disputes spreadsheet, Plaintiff is not attaching the entire spreadsheet as an exhibit. Should the Court wish to review the spreadsheet, Plaintiff can provide a copy.

certification discovery.  (ECF No. 22.)  The deadline for filing dispositive motions on the merits of Plaintiff's individual claims is May 14, 2019.  (ECF No. 60.)[8]

In the operative complaint, Plaintiff alleges that Equifax violated 15 U.S.C. § 1681c(a) for reporting obsolete information, violated 15 U.S.C. § 1681e(b) for failing to follow reasonable procedures to assure maximum possible accuracy, and violated 15 U.S.C § 1681i for failing to conduct a reasonable reinvestigation in response to Plaintiff's dispute, and that such violations were negligent as set forth in § 1681o or willful as set forth in § 1681n.  (SAC ¶¶ 66-80.)  Plaintiff now seeks summary judgment on his claim that Equifax willfully violated § 1681c(a).

## ARGUMENT

### I.    Legal Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). A party may move for summary judgment on only part of a claim or defense.  *Id.* & adv. comm. nn. (2010) ("[S]ummary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense.").  While the court views the evidence in the light most favorable to the non-moving party, the non-moving party may

---

[8] Normally, the one-way intervention rule would prevent Plaintiff from seeking summary judgment prior to class certification.  *See Hartley v. Suburban Radiologic Consultants, Ltd.*, 295 F.R.D. 357, 368 (D. Minn. 2013) (explaining problem of one-way intervention). Defendant, however, has agreed not to oppose class certification on one-way intervention grounds should Plaintiff's motion for summary judgment be granted on any aspect of his individual claims.  (ECF No. 15 at 12); *see also Mendez v. The Radec Corp.*, 260 F.R.D. 38, 45 (W.D.N.Y. 2009) (discussing waiver of one-way intervention arguments).

not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Ahle v. Veracity Research Co.*, 738 F. Supp. 2d 896, 901 (D. Minn. 2010) (quotations omitted); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

## II.     The FCRA prohibits reporting obsolete information stemming from a period of delinquency.

The FCRA is to be liberally construed in favor of the consumer. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (finding that "consumer oriented objectives support a liberal construction of the FCRA"); *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (" '[C]onsumer oriented objectives support a liberal construction of the FCRA,' and any interpretation of this remedial statute must reflect those objectives.") (quoting *Guimond*, 45 F.3d at 1333).

To protect consumers, the FCRA bars consumer reporting agencies from reporting obsolete information.  Specifically:

> [N]o consumer reporting agency may make any consumer report containing any of the following items of information: . . .
>
> (4) Accounts placed for collection or charged to profit and loss which antedate the report by more than seven years.
>
> (5) Any other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years.

15 U.S.C. § 1681c.[9]

As shown by § 1681c(a)(5), the general rule is that any adverse information older than seven years cannot be reported. The FTC has made clear that for delinquent accounts that are not placed for collection, nor charged to profit and loss, the catch-all of 15 U.S.C. § 1681c(a)(5) applies. Federal Trade Commission, Forty Years of Experience with the Fair Credit Reporting Act at 57 (2011) (hereinafter, "FTC, Forty Years") ("A delinquent account that has neither been placed for collection, nor charged to profit and loss, may be reported for seven years from the date of the commencement of the delinquency.") (Albanese Decl., Ex. 8).[10]

For delinquent accounts that are the subject of certain activities such as external or internal collection efforts, or are charged off, the seven year period begins to run 180 days from the commencement of the delinquency, effectively providing consumer reporting agencies with an additional 180 days to report the delinquent debt.[11] 15 U.S.C. § 1681c(c) ("[W]ith respect to any delinquent account that is placed for collection (internally or by referral to a third party, whichever is earlier), charged to profit and loss, or subjected to any similar action, upon the expiration of the 180-day period beginning on the date of the

---

[9] 15 U.S.C. § 1681c(b) sets forth exemptions to the obsolescence requirements. None of the exemptions are applicable to this matter.

[10] Available at https://www.ftc.gov/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations

[11] As explained above, Equifax never took advantage of the extra six months provided for accounts placed for collection, deleting all accounts after six years and eleven months, except for the accounts of people like Plaintiff Beseke, who subsequently caught up on their debts.

commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action."). [12]

The triggering event for the seven-year obsolescence period is the commencement of the delinquency. The general rule is, "A delinquent account that has neither been placed for collection, nor charged to profit and loss, may be reported for seven years from *the date of the commencement of the delinquency*." FTC, Forty Years at 57 (emphasis added). The special rule for collection accounts is that "[t]he 7-year period . . . begin[s] . . . upon the expiration of the 180-day period beginning on *the date of the commencement of the delinquency.*" § 1681c(c) (emphasis added). In either case, the clock starts upon the commencement of the delinquency, and the rule applies no matter how long the consumer remains delinquent. [13]

Importantly, the FCRA bars not only the mere reporting information that is in fact older than seven (or seven and a half) years, but extends to information that even indicates the "existence" of obsolete information. *Serrano v. Sterling Testing Sys., Inc.*, 557 F. Supp.

---

[12] Section 1681c(c) states that it applies to "paragraphs (4) and (6) of subsection (a)." This is a cross-referencing error. The 180-day period provision was added to the FCRA in 1997 when 1681c(a) had 6 paragraphs. 1996 Reform Act. Pub. L. No. 104-208 § 2406, 110 Stat. 3009 (Sept. 30, 1996). In 1998, section 1681c was amended to strike paragraph 5 and redesignate paragraph 6 as paragraph 5. Consumer Reporting Employment Clarification Act of 1998, Pub. L. No 105–347, 112 Stat 3208 (Nov. 2, 1998). The cross-reference in § 1681c(c), however, was not updated to reflect the elimination of subsection 5. Thus, § 1681c(c) should be read as referring to paragraphs (4) and (5) of § 1681c(a).

[13] Plaintiff's account was in internal collections, but Equifax claims it was not made aware. However, whether Equifax knew and whether that would affect whether the seven year or seven and one-half year rule applies are irrelevant because (1) it is undisputed that Equifax reported more than seven and a half years beyond the commencement of the delinquency, and (2) under Equifax's policy, Equifax's awareness of the collection status wouldn't have made a difference. (Leslie Dep. 172:8-174:22.)

2d 688, 692-93 (E.D. Pa. 2008) (finding information that showed the mere "*existence* of an arrest record" to be an adverse item of information covered by § 1681c(a)(5).).

The purpose of § 1681c is ensure that a consumer is not burdened "for life with a bad credit record if he has improved his performance," and to enable "the average consumer to start with a clean slate."  115 Cong. Rec. 33410 (1969) (statement of Sen. Proxmire).  The FCRA "reflects a policy choice to allow dated adverse credit data to 'age off' a credit report because such information might otherwise indefinitely hamper the borrowing capabilities of now-reformed individuals."  *Seamans v. Temple Univ.*, 744 F.3d 853, 863 (3rd Cir. 2014).

To ensure that § 1681c is followed, the FCRA requires that creditors and other furnishers of information notify the consumer reporting agency of the "the date of delinquency for any account that is being placed for collection, charged to profit or loss, or subjected to any similar action."  15 U.S.C. § 1681s-2(a)(5); *see also* FTC, Forty Years at 56 (2011) ("Section 1681s-2(a)(5) requires a party that reports such accounts to a CRA to provide the 'date of delinquency' that the CRA will use to calculate the seven year period."); *see also Seamans*, 744 F.3d at 863 ("The date of delinquency enables the CRA to calculate the seven-year window for 'aging-off' purposes—without it, the CRA would be unable to determine when the account had been placed for collection, rendering the 'aging-off' date impossible to calculate.").

The FTC, which is authorized to enforce the FCRA,[14] has consistently opined that where a consumer has a period of delinquency and then catches up on the debt, the applicable obsolescence period dates to when the period of delinquency started. The reason for this is simple: if the obsolescence period restarted when the consumer repaid the debt, consumers who repaid their debts would be punished while those who did not repay their debts would be rewarded:

> [15 U.S.C. § 1681c(a)(4)] provides that accounts placed for collection or charged to profit and loss may not be reported for if they antedate the report by more than seven years. There is no exception to that prohibition for accounts which are subsequently paid and such an interpretation would have the effect of punishing consumers who repay their indebtedness while rewarding those who do not. Therefore, it has been the staff opinion that subsequent repayment of an account placed for collection or charged to profit and loss does not extend the period for which it may reported.

Peeler, FTC Informal Staff Opinion Letter (Aug. 8, 1979) (ECF No. 32-1).

In other words, making subsequent payments on a delinquent debt does not reset the obsolescence period. The FTC has reaffirmed and reiterated this rule many times over the course of the last forty years. Fitzpatrick, FTC Informal Staff Opinion Letter (Mar. 8, 1985) (ECF No. 32-2); Brinckerhoff, FTC Informal Staff Opinion Letters (July 26, 1985) (ECF No. 32-3). In its 2011 Staff Report, the FTC provided "[t]he reporting period *is not extended* . . . by a partial or full payment of the account. FTC, Forty Years at 57 (emphasis added). If a repayment agreement is made, "[a] consumer's repayment agreement with the creditor or a collection agency may be treated as a new account that has its own seven year period." *Id*.

---

[14] 15 U.S.C. § 1681s.

Notably, this is not the first time that Equifax has been sued over the reporting of accounts where a consumer has caught up on a debt.  In *Gillespie*, Equifax was sued regarding the clarity of the "Date of Last Activity" field on its consumer file disclosures. Prior to the *Gillespie* litigation, there was no date of first delinquency on a consumer file disclosure, only a date of last activity.

At the time of the *Gillespie* litigation, the date labeled as the "date of last activity" on an Equifax disclosure represented two very different kinds of information.  For an account that was reported as delinquent at the time of the disclosure, the date labeled as "date of last activity" represented the date on which the delinquency began.  But for an account that was reported as current at the time of disclosure, the date labeled as "date of last activity" represented the date of the most recent payment.  At issue in *Gillespie* were previously delinquent accounts and a consumer's right to know when Equifax would stop reporting such accounts.  As described by the *Gillespie* court, "[i]n the case of a previously delinquent account in which the consumer has started to make subsequent payments, the last payment by the consumer replaces the delinquency date in the Date of Last Activity field."  *Gillespie*, 484 F.3d at 939.

The consumers alleged that using "date of last activity" as a label for two totally different kinds of information did "not allow [consumers] to determine whether Equifax is properly calculating the seven and one-half year limitation period as required pursuant to § 1681c(a)(4)" and therefore violated Equifax's obligation to provide a clear and accurate disclosure pursuant to 15 U.S.C. § 1681g.  *Id.* at 940.

18

The Seventh Circuit reversed the district court and found that Equifax's disclosure was not clear.  In particular, the Seventh Circuit was concerned that Equifax's policy of replacing the date when a delinquency began with the date on which the most recent payment was made could improperly restart the obsolescence clock for delinquent accounts that were subsequently paid, allowing such delinquencies to be reported for longer than seven years after they began:

> More troubling is the concern that Equifax's exclusive use of the Date of Last Activity could effectively allow Equifax the opportunity to keep delinquent accounts in the credit file past the seven and one-half year limitation of § 1681c(c)(1).  The Date of Last Activity that previously listed the date of delinquency in the account will be replaced should the consumer make an intervening payment on the account.  The date of the intervening payment would become the new Date of Last Activity used in the seven and one-half year calculation.  However, the negative credit history relating to the prior delinquency would presumably remain within the consumer's credit file despite the fact that the consumer faces a new seven and one-half year period before the information is removed from her file.

*Id.* at 942.  Equifax has ignored the text of the FCRA, the FTC's guidance, and the warning from the Seventh Circuit, and instead reporting obsolete information for consumers who catch up on their debts.

### III.   Equifax reported obsolete information in willful violation of the FCRA.

As shown by the undisputed facts, with respect to Plaintiff, Equifax's policy of punishing consumers who catch up on their debts violates both § 1681c(a)(4) and § 1681c(a)(5) of the FCRA.  The FCRA makes clear that for delinquent debts, the obsolescence clock runs from "the date of the commencement of the delinquency."  15 U.S.C. § 1681c(c); FTC, Forty Years at 57 ("A delinquent account that has neither been

placed for collection, nor charged to profit and loss, may be reported for seven years from the date of the commencement of the delinquency.")

Equifax's records show that Plaintiff's Chase mortgage had a continuous period of delinquency from October 2008 through June 2011. Plaintiff's mortgage was sent to internal collections by Chase. Even applying the longer seven years and 180 days obsolescence period of § 1681c(c), Equifax could not report the derogatory trade history stemming from the delinquency period that commenced in October 2008 any later than April 2016. Equifax, however, continued to report the derogatory trade history stemming from the 2008 delinquency well into 2017 – nearly nine years after the commencement of the delinquency. Thus, Equifax violated § 1681c(a)(4) because it reported Plaintiff's Chase mortgage beyond the allowable period for accounts that are referred to collections. Further, Equifax violated § 1681c(a)(5) because the derogatory trade history associated with the delinquency commencing in 2008 were adverse items of information that could not be reported more than seven years beyond the commencement of the delinquency.

Because Plaintiff caught up on his debt, Equifax punished Plaintiff and continued to report the derogatory account history information related to his 2008 delinquency far beyond the period allowed the FCRA. This policy and its perverse results run contrary to the text of the FCRA and its consumer protection purpose.

The FCRA prohibits both negligent and willful violations of the statute. For negligent violations of the FCRA, a consumer may recover his actual damages, attorneys' fees and costs. 15 U.S.C. § 1681o. For willful violations, a consumer may additionally recover statutory damages and punitive damages. 15 U.S.C § 1681n. Willfulness under

the FCRA includes both knowing and reckless violations of the statute. *Safeco Ins. Co. v. Burr,* 551 U.S. 47, 56-57 (2007). A party acts in reckless disregard of the FCRA if "the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

In determining willfulness, "the central inquiry focuses on 'objective reasonableness'" of the interpretation of the statute. *Hammer v. Sam's E., Inc.*, 754 F.3d 492, 501 (8th Cir. 2014), abrogated on other grounds by *Spokeo, Inc. v. Robins,* 136 F.3d 1540 (2016) (citing *Fugs v. Sw. Fin. Servs., Ltd.,* 707 F.3d 241, 249 (3d Cir.2012)). In particular, courts "assess whether the reading 'has a foundation in the statutory text' or whether the party interpreting the statute 'had the benefit of guidance from the courts of appeals' or federal regulatory agencies 'that might have warned it away from the view it took.'" *Hammer*, 754 F.3d at 501 (quoting *Safeco*, 551 U.S. at 69-70). A defendant's general familiarity with the FCRA's requirements can support an inference of willfulness. *Phillips v. Grendahl,* 312 F.3d 357, 368 (8th Cir. 2002).

"[W]here a party's action violates an unambiguous statutory requirement, that fact alone may be sufficient to conclude that its violation is reckless, and therefore willful." *Syed v. M-I, LLC*, 853 F.3d 492, 505 n.7 (9th Cir. 2017). Where a defendant has adopted a reckless interpretation of the FCRA, courts have found willful violations of the FCRA as a matter of law. *See, e.g., Syed*, 853 F.3d at 505; *Reardon v. ClosetMaid Corp.*, No. 2:08-cv-01730, 2013 WL 6231606, at *11 (W.D. Pa. Dec. 2, 2013); *Dreher v. Experian Info.*

*Sols., Inc.*, 71 F. Supp. 3d 572, 578-82 (E.D. Va. 2014), vacated on other grounds, 856 F.2d 337 (4th Cir. 2017).

Here, the plain text of the statute, all of the available administrative guidance, and the warning from the Seventh Circuit to Equifax in *Gillespie* all confirm that Equifax's interpretation of the FCRA is objectively unreasonable.  First, Equifax's policy has no grounding in the text of the FCRA.  The FCRA's obsolescence provisions recognize that a delinquency extends over a period of time, but can only be reported for seven years after it begins. That is why the statute refers to "the ***commencement*** of the delinquency."  15 U.S.C. § 1681c(c) (emphasis added).  If a consumer catches up on a delinquent debt, that does not erase the fact that there was a delinquency period covered by § 1681c.  The FCRA treats the date of the commencement of a delinquency period as so important that furnishers are required to report it.  15 U.S.C. § 1681s-2(a)(5).

Equifax's obsolescence policy, however, is divorced from the text of the FCRA. For a formerly delinquent account that has become current, Equifax treats that account like there was never any period of delinquency outside of seven years.  Equifax even goes so far as to delete from its ACRO database the date on which the delinquency period commenced.  And while Equifax erases from its database the date when a delinquency period commenced, Equifax nevertheless continues to report the adverse information associated with the delinquency.  While consumers who ***never pay*** their debts reap the protections of §1681c under Equifax's policy, consumers who have caught on their debts are saddled with negative information well beyond the seven year period.  There is simply nothing in the text of the FCRA that warrants such a counterintuitive and absurd result.

22

Indeed, for accounts that do not get caught up, Equifax appears to understand and comply with the requirement that all records of the delinquency – including the monthly reporting within seven years – must be deleted once the *commencement* of the delinquency passes the seven-year mark.  The only difference between Plaintiffs' account and those that Equifax deletes is that Plaintiff Beseke caught up on his debt.  But there is no distinction in the text of § 1681c between debts that are caught up and debts that remain delinquent.  Nor should there be.

Equifax is fully aware that the FCRA's obsolescence period starts with the commencement of the delinquency which is why Equifax deletes based on the *date of the commencement of the delinquency* for accounts that remain delinquent.  But Equifax chooses to ignore the rule for accounts that get caught up.

For previously delinquent accounts, Equifax's policy essentially treats each month that an account remains delinquent as a new delinquency period.  But the fact that the industry chooses to re-report the fact that an account is still delinquent on a monthly basis does not mean that there is a new delinquency each month.  Nothing in the FCRA requires creditors to report to Equifax with any particular frequency.  That credit reports include a box for each month simply reflects the frequency with which accounts are reported.  But no matter how many times a delinquency gets reported, it is all part of a single, ongoing delinquency[15] -- whether it gets reported each day, each month, each year, or just once at the commencement of the delinquency.  Under any reasonable reading of the statute and

---

[15] Of course, if a consumer gets caught up then later falls behind again, that would constitute a new delinquency.

any reasonable understanding of its purpose, the re-reporting of the delinquency each month or at any other interval should not affect when the information is purged.

Equifax's policy creates a perverse disincentive for consumers to pay their debts. One of the widely recognized purposes of credit reporting is to incentivize debtors to pay their debts. *See, e.g., Edeh v. Midland Credit Mgmt., Inc.,* 748 F. Supp. 2d 1030, 1036 (D. Minn. 2010) (quoting FTC finding that explained, "[T]he reality is that debt collectors use the reporting mechanism as a tool to persuade consumers to pay, just like dunning letters and telephone calls"), aff'd, 413 Fed. Appx. 925 (8th Cir. 2011). But Equifax's policy creates the opposite incentive. From a credit-reporting standpoint, Mr. Beseke would have been better off not making the payments to get caught up.

In addition to having no grounding in the text of the FCRA, Equifax and its policy fail to heed the FTC's administrative guidance. For nearly 40 years, the FTC has consistently opined that a payment on a delinquent debt does not restart the obsolescence clock. Peeler, FTC Informal Staff Opinion Letter; Fitzpatrick, FTC Informal Staff Opinion Letter (Mar. 8, 1985); Brinckerhoff, FTC Informal Staff Opinion Letters (July 26, 1985). This unambiguous administrative guidance amply demonstrates Equifax's interpretation of the FCRA is unreasonable.

Lastly, the Seventh Circuit's decision in *Gillespie* explicitly warned Equifax that Equifax should not punish consumers for catching up on debts by restarting the obsolescence clock when the consumer makes a subsequent payment. There, the Court was concerned "the date of delinquency in the account will be replaced should the consumer make an intervening payment," "the date of intervening payment would become

24

the new [date] used in the seven and one-half year calculation," and "the negative credit history relating to the prior delinquency would presumably remain within the consumer's credit file despite the fact that the consumer faces a new seven and one-half year period before the information is removed from her file." *Gillespie*, 484 F.3d at 942.

The scenario outlined by the Seventh Circuit is exactly what happened with Plaintiff's mortgage. In Equifax's consumer reporting database, the date of last activity and date of first delinquency occupy the same space in the database. When a consumer makes a payment on a previously delinquent account the prior date of first delinquency is deleted and replaced by the date of last activity. (Leslie Dep. 103:10-104:20). As shown in the frozen scans, when Plaintiff's delinquency period ended and Plaintiff caught up on the debt, Equifax restarted the obsolescence period by overwriting the date of first delinquency with the date of last activity. (Leslie Dep. 71:9-72:8; 74:12-75:16. & Ex. 51.) Given the unconditional warning from the Seventh Circuit in *Gillespie*, no reasonable consumer reporting agency would maintain a policy where an intervening payment on a delinquent account resets the obsolescence period.

In sum, there is no reasonable interpretation of the FCRA that would allow for Equifax's conduct. Given the text of the statute, the consistent guidance from the FTC, and the Seventh Circuit's decision in *Gillespie*, Equifax's interpretation of the FCRA was not only unreasonable, but reckless. Courts have granted summary judgment to plaintiffs on far less egregious facts. *Syed*, 853 F.3d at 505 (granting summary judgment to plaintiff on willfulness even though it was the "first federal appellate court" to rule on the particular provision of the FCRA at issue); *Reardon*, 2013 WL 6231606, at *11 (granting summary

25

judgment in light of statutory language and agency guidance); *Dreher*, 71 F. Supp. 3d at 578-82 (E.D. Va. 2014), vacated on other grounds, 856 F.2d 337 (4th Cir. 2017) (granting summary judgment to Plaintiff even where Defendant had relied on administrative guidance that would permit its behavior).

## CONCLUSION

For the above reasons, the Court should grant Plaintiff's motion and find that as a matter of law, Equifax not only violated section 1681c but did so willfully.

Respectfully submitted,

Dated: May 14, 2019                    **BERGER MONTAGUE PC**

By:    /s/ John G. Albanese
       E. Michelle Drake, # 0387366
       John G. Albanese, # 0395882
       43 SE Main Street
       Minneapolis, MN 55414
       emdrake@bm.net
       jalbanese@bm.net
       Telephone: 612-594-5999
       Facsimile: 612-584-4470

       and

       **GOOLSBY LAW OFFICE, LLC**

       John H. Goolsby, #0320201
       475 Cleveland Ave. N, Suite 212
       Saint Paul, MN 55104
       Telephone:  (651) 646-0153
       jgoolsby@goolsbylawoffice.com

       **Attorneys for Plaintiff**