# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Kurt A. Beseke,                                    Civil No. 17-4971 (DWF/KMM)

        Plaintiff,

v.                                                 **MEMORANDUM**
                                                   **OPINION AND ORDER**

Equifax Information Services LLC

        Defendant.

---

E. Michelle Drake, Esq., and John G. Albanese, Esq., Berger & Montague, PC; and John H. Goolsby, Esq., Goolsby Law Office, LLC, counsel for Plaintiff.

Billie B. Pritchard, Esq., Meryl W. Roper, Esq., and Zachary Andrew McEntyre, Esq., King & Spalding LLP; and Christopher J. Haugen, Esq., Joseph W. Lawver, Esq., and Terri A. Running, Esq., Messerli & Kramer P.A., counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court on Plaintiff Kurt A. Beseke's ("Beseke")[1] Motion for [partial] Summary Judgment (Doc. No. 61) and Defendant Equifax Information Services LLC's ("Equifax") Motion for Summary Judgment.[2] (Doc. No. 76.) For the

---

[1] Beseke brings this case individually and on behalf of those similarly situated; however, the case was bifurcated with discovery and motion practice on his individual claims to precede class certification discovery. (Doc. No. 22.)

[2] Beseke seeks summary judgment on just one of his three claims. (Doc. No. 72 ("Beseke Memo.") at 4.) Accordingly, the Court treats his motion as one for partial summary judgment.

reasons set forth below, the Court grants in part and denies in part Beseke's motion, and denies Equifax's motion.

## BACKGROUND

Equifax is a consumer reporting agency ("CRA") regulated by the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. § 1681, *et seq.* (Doc. No. 32 ("Sec. Am. Compl.") ¶ 13; *see also* 15 U.S.C. § 1681, *et seq.*) Beseke alleges that Equifax violated certain provisions of the FCRA in connection with its alleged reporting of his Chase Bank mortgage account ("Chase Mortgage").[3] (*See generally* Sec. Am. Compl.)

Specifically, Beseke alleges that Equifax willfully and/or negligently violated the "obsolescence" provision of the FCRA pursuant to 15 U.S.C. § 1681c(a) by including information about his Chase Mortgage in one or more consumer reports after the period allowed by statute.[4] (Sec. Am. Compl. ¶¶ 66-70 ("Count I"); *see also* 15 U.S.C. § 1681c(a).) He also alleges that Equifax willfully and/or negligently violated the "accuracy" provision of the FCRA pursuant to § 1681e(b) by failing to include a "Date of First Delinquency" in consumer reports (Sec. Am. Compl. ¶¶ 71-75 ("Count II"); *see also* 15 U.S.C. § 1681e(b)), and that that Equifax willfully and/or negligently violated the "reinvestigation" provision of the FCRA pursuant to § 1681i by failing to conduct a

---

[3] Chase acquired the Chase Mortgage from Washington Mutual. (Beseke Memo. at 4; Sec. Am. Compl. ¶¶ 28-29.)

[4] The FCRA has one obsolescence clause for accounts placed for collection or charged to profit and loss, and another for any other adverse items of information. *See* §§ 15 U.S.C. 1681c(a)(4), 1681c(a)(5). The general rule is that adverse information must be excluded after 7 years; however, 180 days are added to accounts placed in collection before the 7-year period begins. *See* 15 U.S.C. § 1681c(c)(1).

reasonable reinvestigation when Beseke disputed the accuracy of information about his Chase Mortgage and by failing to modify his file thereafter (Sec. Am. Compl. ¶¶ 76-80 ("Count III"); *see also* 15 U.S.C. § 1681i).  Beseke moves for summary judgment on Count I.  Equifax moves for summary judgment on all counts.

### 1.    The Delinquency

From at least October 2008 through June 2011, Beseke was behind on his Chase Mortgage.  (Sec. Am. Compl. ¶ 32.)  While he was delinquent, Beseke alleges that he received collection letters, including those that stated the letters were from "a debt collector" "attempt[ing] to collect a debt."  (Doc. No. 72 ("Beseke Memo."); *see also* Doc. No. 63 ("Albanese Decl. 1") ¶ 3, Doc. No. 64, Ex. 1 ("Collection Letters").)  In 2011, Beseke entered into a loan modification with Chase, brought his Chase Mortgage current, and eventually paid it off in 2014.  (Doc. No. 87 ("Beseke Dep.") 51-52; Sec. Am. Compl. ¶ 31; Doc. No. 92 at 5.)

On or around March 2, 2017, Beseke obtained a credit disclosure from Equifax that reflected a history of "past due" for certain months during the period his Chase Mortgage was delinquent.  (Albanese Decl. 1 ¶ 3, Doc. No. 66, Ex 6 ("Leslie Dep.") at 37- 38.)  Beseke alleges that even applying the longer seven years and 180 days obsolescence period of § 1681c(c), Equifax could not report the derogatory trade history stemming from the delinquency period that commenced in October 2008 any later than April 2016.  (Beseke Memo. at 20; *see also* Sec. Am. Compl. ¶¶ 37-39.)

Beseke disputed the reporting of his Chase Mortgage to Equifax in March 2017. (Albanese Decl. 1 ¶ 3, Doc. No. 68, Ex. 6 ("Willis Dep.") at 61-65, Exs. 15-16).)  Beseke

also alleges that while the obsolete information appeared on his credit file, Equifax sold credit reports reflecting the derogatory history to others.  (Beseke Memo. at 10; *see also* Willis Dep. at 24-26, Exs. 14, 17.)  Beseke contends that he was upset by Equifax's reporting and subsequent refusal to fix the report upon his dispute, and that it caused him stress, anger, and frustration.  (Beseke Dep. at 140-142.)

### 2.  Equifax's Reporting System

Equifax's core online credit reporting database is called "ACRO."  (Leslie Dep. at 19.)  ACRO includes encoded algorithms that automatically delete obsolete information at multiple stages.  (*Id.* at 83.)  Equifax alleges that it relies on creditors to report accurate information including the date of first delinquency ("DOFD") and any collection activity, and determines obsolescence accordingly.[5]  (*Id.* at 109, 137, 167-168.)  Specifically, Equifax alleges that it has no independent ability to verify whether a consumer has missed a payment or if an account has been placed for collection.  (Doc. No. 77 ("Equifax Memo.") at 5-6.)

According to Equifax, if a creditor notifies Equifax that a consumer's account has been placed for collection, and the consumer never brings the account current, Equifax deletes the account, in its entirety, six years and eleven months after the DOFD.  (*Id.* at 6; *see also* Leslie Dep. at 86-87.)  If a consumer's account was delinquent but then becomes current, however, Equifax does not remove the account in its entirety.  (*Id.* at 7; *see also*

---

[5]    If a creditor does not provide a DOFD on a delinquent account, Equifax uses the "date open" of the account as a default.  (Doc. No. 77-2 ("Leslie Decl." ¶ 7.)  The DOFD triggers the 7-year countdown for the removal of the delinquent account.  (*Id.* ¶ 9.)

Leslie Decl. ¶¶ 9-10.)  Instead, Equifax removes the DOFD, and replaces it with the date of the consumer's last payment on the account—"date of last activity."[6]  (*Id.*; *see also* Leslie Dep. at 70-72, 173-175.)  For accounts that are delinquent but that are not charged off or placed for collection, Equifax claims that it deletes each individual payment six years and eleven months after the DOFD.  (*Id.* at 7; *see also* Leslie Decl. ¶¶ 9-10.)

Equifax alleges that Chase first reported that Beseke was delinquent on the Chase Mortgage in October 2008, and continued to report that he was late on his mortgage payments each month through June 2011.  (*Id.* at 8; *see also* Leslie Dep. at 70.)  Equifax further alleges that it was never informed that the Chase Mortgage was placed for collection.  (*Id.* at 8-9; *see also* Leslie Dep. at 173.)  When Beseke brought the Chase Mortgage current around August 2011, Chase began reporting that the account was current, and reported a date of last activity as July 2011.  (Leslie Dep. at 73-74.)

When Beseke disputed the allegedly obsolete information that appeared in 2017, Equifax claims that it verified its dates with Chase pursuant to its automated online dispute system and confirmed that its reporting was accurate.  (Equifax Memo. at 12; *see also* Willis Dep. at 50-51.)  Accordingly, Equifax maintains that it did not violate the FCRA because it never reported a single late payment that was more than seven years old.  (*Id.* at 7.)  Equifax further maintains that the information it reported was accurate,

---

[6]     Beseke contends that Equifax retains a monthly "snapshot" that reflects what was in its database at a given time, thereby maintaining access to the DOFD.  (Leslie Dep. at 43-44, Exs. 50-51 at LESLIE000547-548 ("Frozen Scans").)

and that it conducted a reasonable reinvestigation when Beseke disputed its reporting. (Equifax Memo. at 3-4.)

## DISCUSSION

## I.      Legal Standard

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Courts must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.  *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009).  However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     Fair Credit Reporting Act

The FCRA was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilizes accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (internal citations omitted). "'[C]onsumer oriented objectives support a liberal construction of the FCRA,' and any interpretation of this remedial statute must reflect those objectives." *Cortez*, 617 F.3d at 706 (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)).

One of the ways the FCRA protects consumers is by barring CRAs from reporting obsolete information:

> [N]o consumer reporting agency may make any consumer report containing any of the following items of information:
>
> (4)  Accounts placed for collection or charged to profit and loss which antedate the report by more than seven years.
>
> (5)  Any adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years.

15. U.S.C. §§ 1681c(a)(4); 1681c(a)(5).[7]  For delinquent accounts that are placed for collection or charged to profit and loss, the seven year period begins to run 180 days from the commencement of the delinquency.  15 U.S.C. § 1681a(c)(1).  The FCRA "reflects a policy choice to allow dated adverse credit data to 'age off' a

---

[7]     There are some exceptions to the obsolescence requirements; however, none apply here.  *See* 15 U.S.C. §1681c(b).

credit report because such information might otherwise indefinitely hamper the borrowing capabilities of now-reformed individuals." *Seamans v. Temple Univ.*, 744 F.3d 853, 863 (3d Cir. 2014).

To ensure compliance with § 1681c, the FCRA requires that creditors and other furnishers of information notify the CRA of "the date of delinquency for any account that is being placed for collection, charged to profit or loss, or subjected to any similar action." 15 U.S.C. § 1681s-2(a)(5). "The date of delinquency enables the [CRA] to calculate the seven-year window for 'aging-off' purposes—without it, the [CRA] would be unable to determine when the account had been placed for collection, rendering the 'aging-off' date impossible to calculate." *Seamans*, 744 F.3d at 863.

To ensure accurate reporting, § 1681e(b) of the FCRA requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). "The distinction between 'accuracy' and 'maximum possible accuracy' is not nearly as subtle as may at first appear, it is in fact quite dramatic." *Cortez*, 617 F.3d at 722.

While the Eighth Circuit has not decided the issue, other courts have found that actionable inaccuracies under the FCRA include information that is technically accurate but materially misleading.[8] *See, e.g.*, *Seamans,* 744 F.3d at 865 (finding that "technically

---

[8]     The Eighth Circuit observed that there is no binding precedent on whether a technically accurate but misleading report can qualify as inaccurate for the purposes of

correct" information "may nonetheless be inaccurate if, through omission, it creates a materially misleading impression); *Dalton v. Capital Associated Indus. Inc.*, 257 F.3d 409; 415 (4th Cir. 2001) (quoting *Sepulvado v. CSC Credit Servs.*, 158 F.3d 890, 895 (5th Cir. 1998) ("A report is inaccurate when it is 'patently incorrect' or when it is 'misleading in such a way and to such an extent that it can be expected to have an adverse' effect.")); *Koropoulous v. Credit Bureau, Inc.*, 734 F.2d 37, 40 (D.C. Cir. 1984) (stating that a § 1681e(b) claim can be based on a technically accurate report if the report is sufficiently misleading). Whether technically accurate information is sufficiently misleading to qualify as inaccurate for the purposes of the FCRA is generally a question to be submitted to the jury. *See, e.g.*, *Seamans*, 744 F.3d at 865; *Dalton*, 257 F.3d at 415.

Section 1681i of the FCRA also provides, "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is accurate." 15 U.S.C. § 1681i(a)(1)(a). "The grave responsibility imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997); *see also Edeh v. Equifax Info. Servs., LLC*, 974 F. Supp. 2d 1220, 1235 (D. Minn. 2013) (recognizing that a reasonable reinvestigation may require

---

§ 1681e(b) of the FCRA. *Taylor v. Tenant Tracker, Inc.*, 710 F.3d 824, 827 n.2 (8th Cir. 2013).

9

information beyond that provided by a creditor); *White v. Trans. Union, LLC*, 462 F. Supp. 2d 1079, 1083 (C.D. Cal. 2006) (finding it insufficient as a matter of law "that a 'reasonable reinvestigation' amounts to an inquiry that goes only to confirmation of the accuracy of information from its original source").

To sustain a claim under §1681i, courts in the Eighth Circuit have found that a plaintiff must first prove that the disputed information was inaccurate. *See, e.g.*, *Paul v. Experian Info. Sols., Inc.*, 793 F. Supp. 2d 1098, 1101 (D. Minn. 2011); *Fahey v. Experian Info. Sols., Inc.*, 571 F. Supp. 2d 1082, 1088 (E.D. Mo. 2008); *Charles v. Lexisnexis*, Civ. No. 6:19-6005, 2019 WL 1051192, at *2 (W.D. Ark. Mar. 5, 2019).

The FCRA prohibits both negligent and willful violations of the statute. For negligent violations of the FCRA, a consumer may recover his actual damages and attorneys' fees and costs. 15 U.S.C. § 1681o. For willful violations, a consumer may additionally recover statutory and punitive damages. 15 U.S.C. § 1681n.

Willfulness under the FCRA includes both knowing and reckless violations of the statute. *Safeco Ins. Co. v. Burr,* 551 U.S. 47, 56-57 (2007). A party acts in reckless disregard of the FCRA if "the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. Reckless conduct "entail[s] an unjustifiably high risk of harm that is known or so obvious that it should be known." *Id.* at 68 (internal quotation marks and citation

omitted). Accordingly, a willful violation requires that a party's reading of the FCRA is—at minimum—objectively unreasonable. *See id.* at 69.

To determine whether a reading is objectively unreasonable, courts "assess whether the reading 'has a foundation in the statutory text' or whether the party interpreting the statute 'had the benefit of guidance from the courts of appeals' or federal regulatory agencies 'that might have warned it away from the view it took.'"[9] *Hammer v. Sam's E., Inc.*, 754 F.3d 492, 501 (8th Cir. 2014), abrogated on other grounds by *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016) (quoting *Safeco*, 551 U.S. at 69-70).

## III. Beseke's Motion for Partial Summary Judgment

Beseke argues that the FCRA makes clear that for delinquent debts, the obsolescence clock runs from "the date of the commencement of the delinquency." (Beseke Memo. at 19 (citing 15 U.S.C. § 1681c(c).) He alleges that if he had failed to catch up on his loan, Equifax would have removed the entire account and any indication of the delinquency that commenced in 2008 from Beseke's credit report after the expiration of the seven-year obsolescence period.[10] (Sec. Am. Compl. ¶ 38.)

---

[9]    In *Safeco*, the federal courts of appeals had not spoken on the disputed issue, the FTC had issued only an informal opinion, and the statutory text was unclear. *Safeco*, 551 U.S; at 70. Accordingly, the United States Supreme Court found that the defendant's reading of the statues "was not objectively unreasonable, and so [fell] well short of raising the 'unjustifiably high risk' of violating the statute for reckless liability." *Id.*

[10]    Beseke contends that Equifax deletes all accounts after six years and eleven months of delinquent payments, regardless of whether they are placed for collection or charged to profit and loss. (Beseke Memo. at 10 (citing Leslie Dep. at 172-177).)

Beseke contends that because he caught up on the Chase Mortgage, Equifax continued to report the Chase Mortgage pursuant to its policy to replace the DOFD with the date of last activity, and to indicate "past due" for certain months of a delinquency that was more than seven years old. (*Id.* ¶ 39.) Beseke argues that this policy punishes consumers who catch up on their loans and violates § 1681c(a) of the FCRA because making subsequent payments on a delinquent debt does not reset the obsolescence period.[11] (Beseke Memo. at 1, 17.)

Beseke contends that both guidance from the Federal Trade Commission ("FTC") and a warning from the Seventh Circuit support his position.[12] (Beseke Memo. at 17-19.) Specifically, Beseke cites a 2011 FTC Staff Report with Summary of Interpretations that states, "[i]f an account that was charged off is later paid in part or paid in full by the consumer, the reporting period of seven years from the charge off is not extended by the subsequent payment." (Albanese. Decl. ¶ 3, Doc. No. 63-4, Ex. 8; ("FTC 40 Years") at 57.)[13] The FTC 40 Years also provides that, "[a] consumer's repayment agreement with

---

[11]    Beseke contends that Equifax violated § 1681c(a)(4) because it reported his Chase Mortgage beyond the allowable period for accounts that are referred to collections, and that it violated § 1681c(a)(5) because the derogatory trade history associated with the delinquency commencing in 2008 were adverse items of information that could not be reported more than seven years beyond the commencement of the delinquency. (Beseke Memo. at 20.)

[12]    The FTC authorizes the FCRA. 15 U.S.C. § 1681s.

[13]    Beseke's exhibit includes only part of the FTC 40 Years. A full version of the FTC 40 Years is available at https://mnd-ecf.sso.dcn/cgi-bin/show_multidocs.pl?caseid=169590&arr_de_seq_nums=170&magic_num=&pdf_header=&hdr=&pdf_toggle_possible=. The page numbers that the Court references refer to the full version of the FTC 40 Years.

the creditor or a collection agency may be treated as a new account that has its own seven year period." (*Id.*) Beseke also cites informal FTC staff opinion letters, including one from 1979 FTC which states:

> [15 U.S.C. § 1681c(a)(4)] provides that accounts placed for collection or charged to profit and loss may not be reported for if they antedate the report by more than seven years. There is no exception to that prohibition for accounts which are subsequently paid and such an interpretation would have the effect of punishing consumers who repay their indebtedness while rewarding those who do not. Therefore, it has been the staff opinion that subsequent repayment of an account placed for collection or charged to profit and loss does not extend the period for which it may reported.

(Sec. Am. Compl. ¶ 6, Ex. A ("Informal Staff Opinion Letter").) Beseke further contends that the Seventh Circuit warned Equifax that replacing the date when a delinquency began with the date on which the most recent payment was made could improperly restart the obsolescence clock for delinquent accounts that were subsequently paid, allowing such delinquencies to be reported for longer than the seven years after they began:

> More troubling is the concern that Equifax's exclusive use of the Date of Last Activity could effectively allow Equifax the opportunity to keep Delinquent accounts in the credit file past the seven and one-half year limitation of § 1681c(c)(1). The Date of Last Activity that previously listed the date of delinquency in the account will be replaced should the consumer make an intervening payment on the account. The date of the intervening payment would become the new Date of Last Activity used in the seven and one-half year calculation. However, the negative credit history relating to the prior delinquency would presumably remain within the consumer's credit file despite the fact that the consumer faces a new seven and one-half year period before the information is removed from her file.

*Gillespie v. Equifax Info. Servs., L.L.C.*, 484 F.3d 938, 942 (7th Cir. 2007).

Beseke argues that no matter how many times a delinquency gets reported, it is all part of a single, ongoing delinquency whether it gets reported each day, each month, each

year, or just once at the commencement of the delinquency. (Beseke Memo. at 23.) Specifically, he contends that individual late payments do not reset the original seven year obsolescence period. (*Id.* at 24.) Beseke claims that Equifax's interpretation of the FCRA is objectively unreasonable, reckless, and constitutes a willful violation of the statute. (*Id.* at 25.) He contends that Equifax is aware that the FCRA's obsolescence period starts with the commencement of the delinquency because it deletes accounts that remain delinquent based on the DOFD, but that it ignores the rule for accounts that get caught up.[14] (*Id.* at 23.) He argues further that the policy creates a perverse disincentive for consumers to pay their debts and contradicts the text of the FCRA, guidance from the FTC, and warning from the Seventh Circuit. (*Id.*)

Equifax argues that it fully complied with the FCRA's obsolescence rules, and that Beseke's claim fails as a matter of law because it is based on a fundamental misunderstanding of the FCRA. (Doc. No. 102 ("Equifax Opp.") at 1.) Specifically, Equifax contends that § 1681c(a)(4) does not apply, and that it complied with § 1681(c)(a)(5) because it never reported any "item of information" that was more than seven years old. (*Id.* at 2.)

Equifax argues that § 1681c(a)(4) does not apply because it pertains to delinquent accounts placed in collection and: (1) if the Chase Mortgage was placed for collection, Equifax was not notified by either Chase or Beseke; and (2) Beseke brought the Chase

---

[14] Beseke also alleges that other consumers have disputed to Equifax that Equifax reports delinquencies beyond the period allowed by the FCRA. (*Id.*; *see also* Albanese Decl. 1 ¶ 3, Doc. No. 70, Ex. 7 ("Disputes").)

Mortgage current, so it was not delinquent.[15] (*Id.* at 11.) Equifax contends that the Collection Letters do not prove that the Chase Mortgage was placed in collection. (*Id.* at 12.) Equifax also contends that neither Chase nor Beseke reported to Equifax that the account was placed in collection, and that mortgages typically are subject to foreclosure as opposed to placed for collection. (*Id.* at 12-13.) Equifax further maintains that even if the account was placed in collection, it cannot be held liable because it was Chase's responsibility to provide accurate information—including the DOFD and the status of any collection activity. (*Id.* at 13-14 (citing 15 U.S.C. § 1681s-2(a)(5)(A).) Accordingly, Equifax argues that § 1681c(a)(4) does not apply.

Equifax also contends because § 1681c(c)(1) states only that delinquent accounts must be omitted from reports after seven years and 180 days from the DOFD, it does not apply to the Chase Mortgage because Beseke brought the account current. (Equifax Opp. at 16.) Equifax argues that when Beseke brought his Chase Mortgage current in 2011, "it stopped the clock on the purge date" and that Equifax properly applied § 1681c(a)(5), removing individual late payments as opposed to deleting the entire account. (*Id.* at 17 - 18 (citing Leslie Dep at 91).)

Equifax contends that Beseke attempts to avoid its straightforward interpretation based on the misunderstanding that § 1681c(c)(1), which defines the lifespan of delinquent accounts placed for collection or charged off, also applies to successive

---

[15]     The Court observes that Beseke submitted dozens of letters, each with the heading "Notice of Collection Activity" as evidence that the Chase Mortgage was placed in collection. (*See* Collection Letters.)

months of delinquent activity on current, paid-as-agreed accounts. (Equifax Opp. at 2.)

Equifax argues that if a consumer falls behind on his or her payments and then catches up, the obsolescence rules do not require a CRA to stop reporting the account entirely; instead, Equifax contends that the obsolescence rules require the CRA to stop reporting each individual "item of information" after seven years. (*Id.* at 18-19.) In short, Equifax contends that § 1681c(c)(1) applies only to a delinquent account that has remained delinquent for seven years—even if that account was not ultimately placed for collection or charged off. (*Id.* at 20.)

Specifically, Equifax contends that § 1681c(a)(5) directs CRAs to omit individual "adverse item[s] of information" after seven years—not a series of information—nor does it specify a specific "running of reporting period" for successive delinquencies on current accounts." (*Id.* at 18-19.) Accordingly, Equifax argues that based on the plain language of the statute, Equifax treats each individual late payment as a discrete "adverse item of information" that should "roll off" the consumer's file by the late payment's seven-year anniversary. (*Id.* at 19 (citing Leslie Dep. at 175-176).)

Equifax argues that its interpretation is consistent with the plain language of § 1681c, and aligns with the fundamental purpose of the FCRA to ensure the accuracy, relevancy, and proper utilization of consumer reports. (*Id.* at 18 (citing § 1681b).) Equifax argues further that its policy is consistent with industry practice, and that any other practice would "potentially deprive consumers of the benefit of having current, paid-as-agreed accounts (including mortgages) reported to the third parties vetting their creditworthiness." (*Id.* (citing Leslie Decl. ¶ 9 ("This procedure is consistent with

industry practice.")).)  Equifax also maintains that its interpretation does not punish consumers who catch up on their debts as compared to those who never pay back their debts.  (*Id.* at 21.)  Equifax alleges that consumers who never pay back their debts lose their accounts entirely, whereas those who catch up have the benefit of positive reporting on a current, paid-as-agreed account.  (*Id.* at 22.)

Equifax also argues that Beseke's claim fails because he has not proven that Equifax issued a "consumer report" that included information about his Chase Mortgage. (*Id.* at 23.)  Equifax contends that a "consumer report" is legally distinct from a "consumer disclosure," and any alleged inaccurate information in a "consumer disclosure" fails to support a § 1681c claim.[16]  (*Id.* at 23-24.)  Equifax contends that despite its specific requests, Beseke has not produced any consumer reports.  (*Id.* at 24.) Equifax contends that Beseke's mere assertion that Equifax sold multiple credit reports regarding Beseke does not establish or allow the Court to infer that the reports contained information about the Chase Mortgage.  (*Id.* at 25.)

Equifax claims that it does not know whether those reports included information on the Chase Mortgage, nor does it maintain copies of consumer reports or have the ability to recreate them from its internal records.  (*Id.*)  Equifax contends that the content in consumer reports is not uniform; that depending on the third party's request, a report

---

[16]    Equifax contends that a consumer disclosure shows information that is contained in a consumer filed; it does not show what specific information it reports to third parties—which could vary from report to report.  (Equifax Opp. at 5-6 (citing Doc. No. 77, Ex 2 ("Leslie Decl.") ¶ 15).)

could include as much information as the consumer's entire file or simply attributes of that file.  (*Id.* (citing Leslie Dep. at 37-38).)

"At a bare minimum," Equifax claims that Beseke has failed to show that it willfully violated the FCRA.  Equifax argues that the relevant statutory language does not unambiguously support Beseke's theory, and that Beseke has failed to identify any relevant authority that would have warned Equifax away from the view it took.  (*Id.* at 3, 26-33.)

Equifax contends that *Gillespie* is irrelevant dicta that did not analyze § 1681c(a)(5) or any intersection among that subsection, § 1681c(a)(4), and § 1681c(c)(1).  (*Id.* at 28.)  Equifax argues that "'at most" the [*Gillespie*] Court expressed some 'concern' that the DOFD could be replaced with a [date of last activity] based on an intervening payment, which 'would become the new [date of last activity] used in the seven and one-half year calculation,' while also leaving the 'negative credit history . . . within the consumer's file.'"  (Equifax Opp. at 28 (citing *Gillespie*, 484 F.3d at 942).)  Equifax also argues that by referencing the "seven and one-half year calculation," *Gillespie* was referring to consumers who made intervening payments on delinquent accounts placed for collection or charged off, but who never caught up and brought their accounts current—which Equifax contends does not apply here.  (*Id.*)

Equifax also contends that FTC 40 Years guidance does not support Beseke's claim because "[a] CRA clearly cannot 're-age' a delinquent account once it has been deleted pursuant to § 1681c(a)(4)—regardless of any subsequent payments between the creditor and consumer."  (*Id.* at 29.)  Equifax contends that 1990 FTC Guidance provides

that "where a borrower brings his delinquent account to date and returns to his regular

payment schedule . . . a consumer reporting agency may disregard any collection activity

with respect to the first delinquency[.]"[17] (*Id.* (citing Statement of General Policy or

Interpretation; Commentary on the Fair Credit Reporting Act, 55 FR 188804-01,

comment 605(a)(4)-1) ("1990 FTC Commentary").) Equifax argues further that even if

the FTC Forty Years supported Beseke's position, the staff report does not provide the

type of authoritative guidance necessary to put Equifax on notice of some issue with its

obsolescence procedures. (*Id.*) Equifax also contends that reliance on informal opinion

letters by the FTC is misplaced. (*Id.* at 30 (citing *Schoebel v. Am. Integrity Ins. Co. of

Fla.*, Civ No. 8:15-380-T-24 AEP, 2015 WL 3407895, at *10 (M.D. Fla. May 27, 2015)).)

Equifax argues that the letters not only precede the 1990 FTC Commentary, but none of

them address a CRA's reporting obligations where a CRA has no knowledge, nor any

reason to know, that the account was allegedly placed for collection. (Equifax Opp. at

32.)

The Court first addresses Equifax's argument that § 1681c(a)(4) does not apply

because the Chase Mortgage was not placed in collection or charged to profit or loss, or

because Equifax did not know that it was placed in collection or charged to profit or loss.

---

[17] The Court has quoted the Equifax Memo. as written; however, the Court observes that Equifax omits key words from the original citation. The 1990 FTC Commentary actually provides that, "where a borrower brings his delinquent account to date and returns to his regular payment schedule, **and later defaults again**, a consumer reporting agency may disregard any collection activity with respect to the first delinquency[.]" (1990 FTC Commentary (emphasis added).) Here, Beseke did not default again after becoming current on the Chase Mortgage.

The record reflects that Beseke received a number of dunning notices. (*See* Collection Letters.) The FTC Forty Years defines "placed for collection" as "internal collection activity by the creditor, as well as placement with an outside collector." (FTC Forty Years at 57.) Upon reviewing the numerous Collection Letters that clearly state, "Notice of Collection Activity," the Court finds that the Chase Mortgage was placed in collection. (*See* Collection Letters.)

With respect to Equifax's argument that it did not know the Chase Mortgage was in collection, Equifax had an affirmative duty to establish "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about who the report relates." 15 U.S.C. § 1681e(b). Therefore, the onus was not on Chase or Beseke to inform Equifax that the account was placed in collection. Moreover, § 1681s-2(a)(5)(A) of the FCRA requires only that Chase "notify [Equifax] of the date of delinquency on the account, which shall be the month and year of the commencement of the delinquency on the account" in collection. 15 U.S.C. § 1681s-2(a)(5)(A). Equifax does not appear to dispute that Chase properly notified Equifax of the date of the commencement of the delinquency.[18] (Equifax Memo. at 8.) Contrary to Equifax's

---

[18] While Equifax relies on *Spence v. TRW, Inc.*, 92 F.3d 380, 383 (6th Cir. 1996) to argue that a CRA cannot be held liable under § 1681c(a)(4) when a CRA is unaware that plaintiff's account was placed for collection, *Spence* predates the amendment to the FCRA that requires furnishers of information to provide the date of the commencement of the delinquency. (*See* FTC Forty Years at 2-3.) Accordingly, the CRA in *Spence* neither knew, nor could have known when the obsolescence clock began to toll. Here, Equifax knew that the Chase Mortgage was delinquent, and knew exactly when the delinquency began. While the *Spence* court observed that if the plaintiff had "directly conveyed to [the CRA] the pertinent information when the hospital debt had been placed for collection . . . [the CRA] presumably would have deleted the item as obsolete

assertion, the Court finds that there is no specific requirement—beyond providing the DOFD—for Chase to expressly inform Equifax that the Chase Mortgage was placed in collection.

Equifax also contends that § 1681c(a)(4) pertains only to delinquent accounts and does not apply here because Beseke brought his account current. Notwithstanding, Beseke's account *was* delinquent at one point. Section 1681c(a)(4) refers only to "accounts placed for collection" and does not distinguish between delinquent accounts and formerly delinquent accounts. 15 U.S.C. § 1681c(a)(4). The Court finds that when Beseke brought his account current, it did not re-age the original delinquency. The FTC Forty Years specifically states that "[a] consumer's repayment agreement with the creditor or a collection agency may be treated as a new account that has its own seven year period." (FTC Forty Years at 57.) This is precisely what happened here. The Court finds that when Beseke brought the Chase Mortgage current, Equifax should have treated it as a new account, and that the prior delinquency should have been subject to the FCRA's obsolescence rules. Pursuant to the reporting period set forth in § 1681c(c)(1), the late payments stemming from the original delinquency should not have been reported after April 2016.

While Equifax relies on the 1990 FTC Commentary to argue that where a consumer brings his or her delinquent account to date it can disregard any collection

_____

pursuant to § 1681c(a)(4)," at that time, the CRA lacked the benefit of the DOFD which would have provided the same information necessary to calculate the date of obsolescence. *Spence*, 92 F.3d at 383.

activity with respect to the first delinquency, the Court finds that this guidance—read in its entirety[19]—provides only that where a consumer brings his or her delinquent account current and defaults again, a CRA should use the new default date as the date to determine when to purge the entire account.  Here, Beseke did not default again.

The Court finds that when Equifax replaced the DOFD with the date of last activity, it effectively re-aged delinquent payments that but for Beseke becoming current on his account, would have aged off no later than April 2016.  While Equifax contends that *Gillespie* is irrelevant because it did not address a claim brought pursuant to § 1681c, the Court declines to minimize *Gillespie's* express warning against restarting the obsolescence clock for delinquent accounts that were subsequently repaid.  *Gillespie*, 484 F.3d at 942.  Further, while Equifax contends that its policy does not punish consumers who catch up on their accounts, the Court finds that this is *precisely* what it does.  The policy does not comport with the purpose of the FCRA to protect consumers or align with its policy "to allow dated adverse credit data to 'age off' a credit report because such information might otherwise indefinitely hamper the borrowing capabilities of now-reformed individuals." *Seamans*, 744 F.3d at 863.  The Court finds that Equifax's policy inappropriately re-ages derogatory information and creates a perverse disincentive to pay off delinquent mortgages.

Considering the totality of the evidence, including *Gillespie*, guidance from the FTC, informal staff opinion letters, and the Disputes, the Court finds that Equifax had the

---

[19]    *See supra*, n.12.

benefit of guidance that might have warned it away from the view it took.[20] *Hammer*, 754 F.3d at 501. Notwithstanding, viewing all possible inferences in favor of Equifax, the Court cannot conclude as a matter of law that the available guidance satisfies the high bar of rendering Equifax's reading of the FCRA objectively unreasonable.

It is true that *Gillespie* did expressly warn Equifax precisely of the potential for the harm alleged in this lawsuit; however *Gillespie* did not specifically address a claim under § 1681c of the FCRA. Further, while the FTC guidance and informal staff letters are persuasive, they alone cannot clear the high bar necessary to satisfy a claim of willfulness. The Court finds that whether the guidance as a whole was sufficient to render Equifax's interpretation objectively unreasonable is a question of fact for the jury. Accordingly, while the Court finds that Equifax violated § 1681c of the FCRA, it cannot conclude as a matter of law whether Equifax did so willfully.[21]

The Court next addresses Equifax's argument that Beseke's claim fails because there is no evidence that it issued a consumer report that included information about the Chase Mortgage. The record reflects that Equifax provided SMW Credit Union with access to Beseke's credit file on February 16, 2017. (Willis Dep. at 23-27, Ex. 14

---

[20] While the informal staff letters are not authoritative, numerous courts have found them persuasive when analyzing whether conduct was willful under the FCRA. *See, e.g.*, *Indep. Drivers Ass'n, Inc. v. USIS Com. Servs., Inc.*, 537 F.3d, 1184, 1192 (10th Cir. 2008); *Lengel v. HomeAdvisor, Inc.*, 102 F. Supp. 3d 1202, 1212 (D. Kan 2015); *Harris v. Home Depot U.S.A., Inc.*, 114 F. Supp. 3d 868, 870 at n.1 (N.D. Ca. 2015); *Owner-Operator Reardon v. Closetmaid Corp.* Civ. No. 2:08-01730, 2013 WL 6231606, at 10 (W.D. Pa. Dec. 2, 2013). This Court also finds them persuasive.

[21] Because the Court finds that Equifax violated § 1681c(a)(4), it need not address whether it violated § 1681c(a)(5).

("March 2, 2017 Disclosure") at WILLIS000518.)  Equifax also provided Discover

Financial with access on June 21, 2016.  (*Id.*)  On May 9, 2017 and June 27, 2017,

Equifax allowed RBS Citizens National and Capital One, respectively, to conduct

account review inquiries of Beseke's file.  (Doc. No. 104 ("Albanese Decl. 2") ¶ 3, Doc.

No. 104-2, Ex. 5 ("July 21, 2017 Disclosure") at BESEKE0257.)  The record also reflects

that Equifax provided Beseke's FICO Beacon Credit Score to creditors on April 26,

2017, February 16, 2017, and June 21, 2016.  (Leslie Dep. at 142-147; Albanese Decl. 2

¶ 3, Doc. No. 105, Ex. 20 ("Terminal Audit Report").)  During all of these disclosures,

Beseke's credit file included the derogatory trade history associated with his Chase

Mortgage.  (*See* March 21, 2017 Disclosure at WILLIS000509; *see also* July 21, 2017

Disclosure at BESEKE0246.)

On February 28, 2017 SMW Financial Credit Union notified Beseke of an adverse

decision based on his credit report.  (Doc. No. 113 ("Beseke Aff.") ¶ 10, Ex. A ("SMW

Denial") at 2.)  On July 14, 2017, Capital One also notified Beseke of an adverse decision

based on his credit report.  (*Id.* ¶ 18, Ex. B ("Capital One Denial") at 2.)  Both denials

stated, "Our credit decision was based in whole or in part on information obtained in a

report from the consumer reporting agency."  (SMW Denial at 1; Capital One Denial

at 1.)

While Equifax contends that Beseke cannot prevail on his claim because he

has not produced the credit reports obtained by the creditors, and therefore cannot

prove whether the reports included information about the Chase Mortgage, the

Court is unpersuaded.

First, the FTC 40 Years expressly states that the term "consumer report" includes "numerical or other evaluation of data by a CRA, such as a credit score that bears on a consumer's creditworthiness." (FTC 40 Years at 21.) Here, the record reflects that Equifax provided Beseke's credit score on multiple occasions. (Terminal Audit Report.) Moreover, Beseke received two adverse decisions based "in whole or in part" on his credit file. (SMW Denial at 1; Capital One Denial at 1.) Further, two credit disclosures issued after April 2016 clearly convey that the Chase Mortgage was a part of Beseke's credit file that Equifax provided to creditors. (*See* March 2, 2017 Disclosure; *see also* July 21, 2017 Disclosure.) Accordingly, the Court finds that there is more than enough evidence to conclude that Equifax disclosed Beseke's credit report with the derogatory trade history stemming from the Chase Mortgage to at least one third party.

In short, the Court finds that there is no genuine dispute as to any material fact that Equifax violated § 1681c(a)(4) of the FCRA and that it provided at least one third party with Beseke's credit report reflecting obsolete information. Notwithstanding, the Court cannot conclude as a matter of law that Equifax violated the FCRA willfully. Accordingly, the Court grants in part and denies in part Beseke's motion for partial summary judgment.

## IV.    Equifax's Motion for Summary Judgment

For the reasons discussed above, the Court grants Beseke's motion for summary judgment on Count I insofar as finding that Equifax violated § 1681c of the FCRA. *See supra* Section III. Accordingly, the Court addresses only Counts II and III in Equifax's

motion for summary judgment.[22]  In Count II, Beseke alleges that Equifax willfully and/or negligently violated the "accuracy" provision of the FCRA pursuant to § 1681e(b) by failing to include a "Date of First Delinquency" in consumer reports.  (Count II); *see also* 15 U.S.C. § 1681e(b).)  In Count III, Beseke alleges that Equifax willfully and/or negligently violated the "reinvestigation" provision of the FCRA pursuant to §1681i by failing to conduct a reasonable reinvestigation when Beseke disputed the accuracy of information about his Chase Mortgage.  (Count III); *see also* 15 U.S.C. § 1681i.)

Equifax contends that Beseke's remaining Counts should be dismissed because: (1) the information Equifax provided was accurate; (2) Equifax conducted a reasonable reinvestigation of the disputed information; and, (3) Beseke cannot recover damages. (Equifax Memo. at 3-4.)

Equifax first argues that Counts II and III fail because Beseke has not identified an inaccuracy in any disclosure.  (*Id.* at 28.)  Equifax contends that it is undisputed that Beseke failed to make timely payments on his Chase Mortgage, and that those delinquencies were accurately recorded in his credit file.  (*Id.* at 29 (citing Beseke Dep. at 55-56, 73, 76.).)  Equifax argues that Beseke attempts to "manufacture an 'inaccuracy' by claiming that Equifax should have included the DOFD on his current account, even

---

[22]    Equifax argues in part that Count II should be dismissed because Beseke did not show that Equifax issued a consumer report with the derogatory history stemming from the Chase Mortgage.  (Beseke Memo. at 24-27.)  As discussed above with respect to Count I, the Court finds that there is more than enough evidence to conclude that Equifax provided at least one third party with Beseke's credit report reflecting obsolete information related to the Chase Mortgage.  (*See supra* Section III.)  The same analysis applies to Count II.  Accordingly, the Court will not address this argument with respect to Equifax's motion for summary judgment.

though the DOFD only applies to delinquent accounts."[23]  (*See id.*)  Equifax also

maintains that omitting the DOFD under these circumstances is consistent with industry

practice and that there is no legal basis for Beseke's claims.[24]  (*Id.* at 30 (citing Doc. No.

77-14, Ex. 20 ("2017 Credit Reporting Resource Guide") at 3-4).)

Beseke contends that if Equifax was going to improperly report the derogatory

trade history associated with the Chase Mortgage, it was materially misleading to omit

the fact that the delinquency commenced in 2008.  (Doc. No. 103 ("Beseke Opp.") at 36.)

By omitting the DOFD, while at the same time reporting the derogatory trade history

associated with the delinquency period, Beseke argues that Equifax created the mis-

impression that Beseke recently stopped paying on his account.[25]  (*Id.* at 37.)  Beseke

contends that is a form of inaccuracy that the FCRA was designed to protect against.  (*Id.*

at 37-38.)

The Eighth Circuit has no binding precedent on whether a technically accurate but

misleading report can qualify as inaccurate for the purposes of § 1681e(b) of the FCRA.

---

[23]  Equifax contends that the DOFD, which serves as a purge key that triggers the seven-year countdown for removal of a delinquent account in its entirety does not apply to a current, paid-as agreed account because the entire account does not get purged. (Equifax Memo. at 29.)

[24]  The 2017 Credit Reporting Resource Guide provides, "[i]f a delinquent account becomes current, the Date of First Delinquency should be zero filed.  Then if the account goes delinquent again, the Date of First Delinquency starts over with a new first delinquency date."  (2017 Credit Reporting Resource Guide at 3-4.)  Equifax also contends that there is no legal basis for Beseke's claims.

[25]  Equifax maintains that is mere speculation that a user of credit information could somehow be misled by the absence of a DOFD for a paid-as-agreed account.  (Doc. No. 118.)

*Taylor v. Tenant Tracker, Inc.*, 710 F.3d 824, 827 n.2 (8th Cir. 2013). Notwithstanding, the Court is persuaded by the holdings of numerous other circuits that have found misleading reports or omissions actionable under the FCRA. *See, e.g.*, *Seamans*, 744 F.3d at 865; *Dalton*, 257 F.3d at 415; *Sepulvado*, 158 F.3d at 895; *Koropoulous*, 734 F.2d at 40. Therefore, the Court finds that Beseke has raised a genuine issue of material fact on the question of accuracy. Whether omitting the DOFD was sufficiently misleading to warrant a willful or negligent violation of § 1681(e)(b) of the FCRA is a triable question of fact for the jury.[26] *Seamans*, 744 F.3d at 865; *Dalton*, 257 F.3d at 415. Accordingly, the Court declines to grant Equifax's motion for summary judgment on this issue.

Equifax next argues that Count III fails because it conducted a reasonable reinvestigation of the information Beseke disputed. (Equifax Memo. at 31.) Equifax contends that consistent with its automated dispute verification process, it submitted Beseke's online dispute and supporting documents to Chase, which subsequently verified the information as reported.[27] (*Id.* at 32.) Equifax contends that it had no reason to question Chase's verification and that other courts have held that its automated dispute

---

[26]     It is also within the province of the jury to conclude whether Equifax's reporting is consistent with industry practice. Based on the record, the Court cannot conclude as a matter of law what the industry practice is, or whether Equifax is comporting with it.

[27]     On the online dispute form, Beseke stated, "You keep re-ageing this account. First delinquency 12, 2006 [sic]. A letter dated 3.24.2017 from Chase says that it has to be removed by you." (Albanese Decl. 2 ¶ 3, Doc. No. 104-5, Ex. 8 at EIS- BESEKE000033.) Beseke asked Equifax to "verify the date of last payment/date opened/date of first delinquency/ date closed." (*Id.*) Beseke also submitted two supporting documents: (1) a portion of a credit disclosure showing delinquencies dating back to December 2006; and (2) the March 24, 2017 letter from Chase. (*Id.* at EIS-BESKEKE000031-32.)

verification process satisfied the FCRA's reinvestigation requirements. (*Id.* (citing *Edeh*, 974 F. Supp. 2d at 1237) .)

Beseke contends that he specifically asked Equifax for verification of the DOFD and attached a credit disclosure that showed that the delinquency commenced more than seven years prior. (Beseke Opp. at 38.) Beseke argues that Equifax failed to conduct a reasonable reinvestigation because it relied exclusively on Chase as opposed to checking its own files for information that would have showed the disputed information was obsolete. (*Id.* at 40.) Specifically, Beseke contends that Equifax possessed frozen scans from Beseke's period of delinquency that clearly indicated a DOFD of October 2008. (*Id.* at 39; *see also* Frozen Scans.)

When Equifax submitted the dispute to Chase through its automated system, Beseke contends that Chase presumably verified the empty field shown for the date of first delinquency as correct because Chase was following the instructions provided by the 2017 Credit Reporting Resource Guide to not report a date of first delinquency on current accounts. (*Id.*; *see also* 2017 Credit Reporting Resource Guide at 3-2.) Beseke argues, though, that because Equifax was reporting the delinquency, it necessarily knew that it must have begun at some point, and that Equifax cannot rationally claim that it reasonably relied on Chase's response to conclude that there was DOFD. (Beseke Opp. at 38-39.)

Beseke argues further that during the period of delinquency from October 2008-July 2011, Chase did report the delinquency with a date of first delinquency of October 2008, and that Equifax had that information in its frozen scans. (*Id.* at 39.) Beseke

contends that there is no evidence that Equifax looked at its historical records to determine whether Chase had previously reported a DOFD that would render the information it was reporting obsolete. (*Id.*)

The Court finds that whether Equifax conducted a reasonable investigation pursuant to § 1681i is a question of fact for the jury. While other courts have found that the automated dispute verification system generally satisfies the FCRA's reinvestigation requirement, a reasonable reinvestigation also requires "more than parroting information received from other sources." *Cushman*, 115 F.3d at 225. Beseke has shown that Equifax had additional information in its possession that it could have used to verify that the DOFD was more than seven years old. In this case, a reasonable jury could conclude that a reasonable reinvestigation required more than merely confirming the accuracy of the information provided by Chase. Accordingly, the Court declines to grant summary judgment on this issue.

Finally, Equifax argues that Beseke's claims fail because he cannot recover statutory or punitive damages pursuant to § 1681n(a) of the FCRA. (Equifax Memo. at 33.) Equifax contends that it did not willfully violate the FCRA and that Beseke has no evidence that he sustained actual damages that could support his negligence claims. (*Id.*)

As discussed above, the Court finds that whether Equifax violated the FCRA willfully is a question of fact for the jury. *See supra,* Section III. The same analysis applies here. Actual damages under the FCRA include emotional distress damages provided that they are "supported by competent evidence of 'genuine injury,' which 'may be evidenced by one's conduct and observed by others.'" *Taylor*, 710 F.3d 824 at 828

(citing *Carey v. Piphus*, 435 U.S. 247, 264 n.20 (1978). "Emotional distress is, by its nature, extremely subjective, and often the only evidence of emotional distress will be the testimony of the distressed person." *Edeh*, 748 F. Supp. 2d at 1041-42.

Equifax argues that Beseke fails to put forth sufficient evidence to allow recovery of emotional distress damages. (Equifax Memo. at 38 (citing *Zean v. Unifund CCR Partners*, Civ. No. 08-1091, 2009 WL 2461723, at *2,*4 (D. Minn. Aug. 10, 2009).) Equifax contends that Beseke's "vague, generalized testimony about [his] alleged injuries" lack the specific, substantive detail required to recover actual damages. (*Id.* at 39.) Equifax argues further that Beseke cannot establish that any denial of credit was due to the Chase Mortgage, as opposed to other derogatory remarks from other creditors. (*Id.* at 39-40.)

Beseke contends that he provides considerable context for his emotional distress, including a description of how he worked hard to restore his credit after difficulties during the 2008 financial crisis, and his anger and frustration when the obsolete information continued to be reported, even after disputing it. (Beseke Opp. at 42-43 (citing Beseke Aff. ¶¶ 1-6).)

Recognizing that emotional distress is highly subjective, and viewing all possible inferences in favor of Beseke, the Court finds that Beseke has presented sufficient evidence of emotional distress to survive summary judgment. *Edeh*, 748 F. Supp. 2d at 1041-42. While a jury may reasonably conclude that he is not entitled to damages, the Court cannot do so as a matter of law.

In short, the Court finds that there are disputes over questions of material fact with respect to Counts II and III.  Accordingly, the Court denies Equifax's motion for summary judgment.

## CONCLUSION

For the reasons set forth above, the Court finds Equifax violated § 1681c(a)(4) of the FCRA and that it provided at least one third party with Beseke's credit report reflecting obsolete information.  Whether Equifax did so willfully is a question of fact for the jury.  Accordingly, the Court grants in part and denies in part Beseke's motion for partial summary judgment with respect to Count I.  The Court also finds that there are questions of material fact with respect to Counts II and III.  Accordingly, the Court denies Equifax's motion for summary judgement.

## ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Plaintiff's Motion for Partial Summary Judgment (Doc. No. [61]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

  a.  Equifax violated § 1681c of the FCRA.

  b.  Whether Equifax violated § 1681c of the FCRA willfully is a question of fact for the jury.

2.      Defendants' Motion for Summary Judgment (Doc. No. [76]) is **DENIED**.


Dated:  November 22, 2019                      s/Donovan W. Frank
                                               DONOVAN W. FRANK
                                               United States District Judge